# IMMIGRATION AND NATURALIZATION SERVICE *v.* YUEH-SHAIO YANG

No. 95–938.   Argued October 15, 1996—Decided November 13, 1996

*Beth S. Brinkmann* argued the cause for petitioner. With her on the briefs were *Solicitor General Days, Acting Solicitor General Dellinger, Assistant Attorney General Hunger,* and *Deputy Solicitor General Kneedler.*

*Howard Hom* argued the cause for respondent. With him on the brief were *Robert L. Reeves, Franklin W. Nelson,* and *Bill Ong Hing.\**

JUSTICE SCALIA delivered the opinion of the Court.

This case presents the question whether the Attorney General, when deciding whether to grant a discretionary waiver of deportation under the applicable provision of the Immigration and Nationality Act (INA), 95 Stat. 1616, as amended, 8 U. S. C. § 1251(a)(1)(H), may take into account acts of fraud committed by the alien in connection with his entry into the United States.

Respondent Yueh-Shaio Yang and his wife, Hai-Hsia Yang, were born and married in the People's Republic of China, and subsequently moved to Taiwan. In order to gain entry to the United States, they executed the following scheme: After divorcing respondent in Taiwan, Hai-Hsia traveled to the United States in 1978 and, using $60,000 provided by respondent, obtained a fraudulent birth certificate and passport in the name of Mary Wong, a United States citizen. Respondent then remarried Hai-Hsia in Taiwan under her false identity and fraudulently obtained an immigrant visa to enter the United States as the spouse of a United States citizen. In 1982, four years after his fraudulent entry, respondent submitted an application for naturalization, which fraudulently stated that his wife "Mary" was a United States citizen by birth and that respondent had been lawfully ad-

---

*Daniel J. Popeo* and *David A. Price* filed a brief for the Washington Legal Foundation as *amicus curiae* urging reversal.

*Sandra E. Kupelian* filed a brief for the American Immigration Lawyers Association et al. as *amici curiae* urging affirmance.

mitted for permanent residence. In 1985, while respondent's naturalization application was still pending, respondent and his wife obtained another divorce in order to permit her to obtain a visa under her true name (as the relative of a daughter who had obtained United States citizenship).

The Immigration and Naturalization Service (INS) ultimately learned of respondent's unlawful entry, and in 1992 issued an order to show cause why he should not be deported. The INS maintained that respondent was deportable under 8 U. S. C. § 1251(a)(1)(A), because he was excludable from the United States at the time of entry under the former 8 U. S. C. §§ 1182(a)(14), (19), and (20) (1988 ed.). Respondent conceded that he was deportable and filed a request for a waiver of deportation under § 1251(a)(1)(H). The Board of Immigration Appeals affirmed the Immigration Judge's denial of this request. The Board concluded that respondent was statutorily eligible for a waiver, but denied it as a matter of discretion. Although the Board did not consider respondent's fraudulent entry in 1978 as itself an adverse factor, it did consider, among other things, respondent's "acts of immigration fraud before and after his 1978 entry into the United States," App. to Pet. for Cert. 10a, including his first sham divorce to facilitate his wife's unlawful entry, his 1982 application for naturalization, and his second sham divorce to assist his wife in obtaining an immigrant visa under her real name.

The Court of Appeals for the Ninth Circuit granted respondent's petition for review, vacated the Board's decision, and remanded the case for further proceedings. *Yang* v. *INS*, 58 F. 3d 452 (1995). The Ninth Circuit held that the Board abused its discretion by considering as an adverse factor respondent's participation in his wife's fraudulent entry, because those acts were "inextricably intertwined with Mr. Yang's own efforts to secure entry into the country and must be considered part of the initial fraud." *Id.*, at 453. The Ninth Circuit also concluded that the Board improperly

considered respondent's fraudulent application for naturalization as an adverse factor because that application "must be considered an extension of the initial fraud." *Ibid.* We granted certiorari. 516 U. S. 1110 (1996).[1]

Section 1251(a)(1)(H) provides, in relevant part, as follows:

"The provisions of this paragraph relating to the deportation of aliens within the United States on the ground that they were excludable at the time of entry as aliens described in section 1182(a)(6)(C)(i) of this title [who have obtained a visa, documentation, entry or INA benefit by fraud or misrepresentation] . . . may, in the discretion of the Attorney General, be waived for any alien . . . who—

"(i) is the spouse, parent, son, or daughter of a citizen of the United States or of an alien lawfully admitted to the United States for permanent residence; and

"(ii) was in possession of an immigrant visa or equivalent document and was otherwise admissible to the United States at the time of such entry except for those grounds of inadmissibility specified under paragraphs (5)(A) and (7)(A) of section 1182(a) of this title [relating to possession of valid labor certifications, immigrant visas and entry documents] which were a direct result of that fraud or misrepresentation."[2]

---

[1] Our jurisdiction over this matter is not in question. See 5 U. S. C. § 702. The Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRA), Div. C., Department of Defense Appropriations Act, 1997, Pub. L. 104–208, 110 Stat. 3009, provides that "[n]otwithstanding any other provision of law, no court shall have jurisdiction to review . . . any . . . decision or action of the Attorney General the authority for which is specified under [Title 8 U. S. C.] to be in the discretion of the Attorney General . . . ." IIRA § 306(a). That provision does not take effect, however, until April 1, 1997. See IIRA §§ 306(c)(1), 309(a) (as amended by Pub. L. 104–302, § 2, 110 Stat. 3656).

[2] The last clause of the quoted provision is less than artfully drawn, since the phrase "that fraud or misrepresentation" has no apparent antecedent. The antecedent was unmistakable in the prior version of the provision,

The meaning of this language is clear. While it establishes certain prerequisites to eligibility for a waiver of deportation, it imposes no limitations on the factors that the Attorney General (or her delegate, the INS, see 8 CFR § 2.1 (1996)) may consider in determining who, among the class of eligible aliens, should be granted relief. We have described the Attorney General's suspension of deportation under a related and similarly phrased provision of the INA as " 'an act of grace' " which is accorded pursuant to her "unfettered discretion," *Jay* v. *Boyd*, 351 U. S. 345, 354 (1956) (quoting *Escoe* v. *Zerbst*, 295 U. S. 490, 492 (1935)), and have quoted approvingly Judge Learned Hand's likening of that provision to " 'a judge's power to suspend the execution of a sentence, or the President's to pardon a convict,' " 351 U. S., at 354, n. 16 (quoting *United States ex rel. Kaloudis* v. *Shaughnessy*, 180 F. 2d 489, 491 (CA2 1950)).

Respondent contends, however, that the portion of § 1251(a)(1)(H)(ii) requiring the alien to be "otherwise admissible"—that is, not excludable on some ground other than the entry fraud—precludes the Attorney General from considering the alien's fraudulent entry at all. The text will not bear such a reading. Unlike the prior version of the waiver-of-deportation statute at issue in *INS* v. *Errico*, 385 U. S. 214 (1966), under which the Attorney General had no discretion to deny a waiver if the statutory requirements were met, satisfaction of the requirements under § 1251(a)(1)(H), includ-

---

which, in its prologue, authorized waiver of deportation "on the ground that [the aliens] were excludable at the time of entry as aliens who have sought to procure or have procured visas or other documentation, or entry into the United States, by fraud or misrepresentation." 8 U. S. C. § 1251(f) (1988 ed.). In the prologue of the current provision, that explicit (but lengthy) reference to fraud or misrepresentation has been replaced by citation of § 1182(a)(6)(C)(i), which uses almost the same language to define a class of excludable aliens. We think it if not obvious, then at least inevitable, that the phrase "that fraud or misrepresentation" refers to the fraud or misrepresentation for which waiver is sought, alluded to, through citation of § 1182(a)(6)(C)(i), in the prologue.

ing the requirement that the alien have been "otherwise admissible," establishes only the alien's *eligibility* for the waiver. Such eligibility in no way limits the considerations that may guide the Attorney General in exercising her discretion to determine who, among those eligible, will be accorded grace. It could be argued that if the Attorney General determined that *any* entry fraud or misrepresentation, no matter how minor and no matter what the attendant circumstances, would cause her to withhold waiver, she would not be exercising the conferred discretion at all, but would be making a nullity of the statute. But that is a far cry from respondent's argument that *all* entry fraud must be excused, which is untenable.

Respondent asserts (and the United States acknowledges) that it is the settled policy of the INS to disregard entry fraud or misrepresentation, no matter how egregious, in making the waiver determination. See *Delmundo* v. *INS,* 43 F. 3d 436, 440 (CA9 1994). This is such a generous disposition that it may suggest a belief on the part of the agency that the statute requires it; and such a belief is also suggested by the INS's frequent concessions in litigation that the underlying fraud for which the alien is deportable "should not be considered as an adverse factor in the balancing equation," *Liwanag* v. *INS,* 872 F. 2d 685, 687 (CA5 1989); see also *Braun* v. *INS,* 992 F. 2d 1016, 1020 (CA9 1993); *Start* v. *INS,* 803 F. 2d 539, 542 (CA9 1986), withdrawn, 862 F. 2d 787 (1988). (Such concessions were facilitated, no doubt, by the Ninth Circuit's frequent intimations that the statute forbade consideration of the initial fraud. See *Hernandez-Robledo* v. *INS,* 777 F. 2d 536, 541 (1985); see also *Braun, supra,* at 1020; *Delmundo, supra,* at 441.) Before us, however, the United States disclaims such a position—and even if that *were* the agency's view we could not permit it to overcome the unmistakable text of the law. See *MCI Telecommunications Corp.* v. *American Telephone & Telegraph Co.,* 512 U. S. 218, 229–230 (1994). But that does not render the

INS's practice irrelevant. Though the agency's discretion is unfettered at the outset, if it announces and follows—by rule or by settled course of adjudication—a general policy by which its exercise of discretion will be governed, an irrational departure from that policy (as opposed to an avowed alteration of it) could constitute action that must be overturned as "arbitrary, capricious, [or] an abuse of discretion" within the meaning of the Administrative Procedure Act, 5 U. S. C. § 706(2)(A). The INS has not, however, disregarded its general policy here; it has merely taken a narrow view of what constitutes "entry fraud" under that policy, excluding events removed in time and circumstance from respondent's entry: his preentry and postentry sham divorces, and the fraud in his 1982 application for naturalization. The "entry fraud" exception being, under the current statute, a rule of the INS's own invention, the INS is entitled, within reason, to define that exception as it pleases. The Ninth Circuit held that the acts of fraud counted against respondent can be described as "inextricably intertwined" with, or an "extension" of, the fraudulent entry itself because they were essential to its ultimate success or concealment. Perhaps so, but it is up to the Attorney General whether she will adopt an "inextricably intertwined" or "essential extension" augmentation of her "entry fraud" exception. It is assuredly rational, and therefore lawful, for her to distinguish aliens such as respondent who engage in a pattern of immigration fraud from aliens who commit a single, isolated act of misrepresentation.

The judgment of the Court of Appeals for the Ninth Circuit is reversed.

*It is so ordered.*