[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 95-5555

_____

D.C. Docket No.95-2001-CIV-SH

HERVE AUGUSTE,

Plaintiff-Appellee,

versus

ATTORNEY GENERAL, UNITED STATES, Janet Reno, IMMIGRATION AND
NATURALIZATION SERVICE, UNITED STATES, DISTRICT DIRECTOR FOR
THE IMMIGRATION AND NATURALIZATION SERVICE, Walter Cadman,

Defendants-Appellants.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(May 12, 1998)**

Before TJOFLAT and EDMONDSON, Circuit Judges, and O'NEILL*,
Senior District Judge.

_____

*Honorable Thomas N. O'Neill, Jr., Senior U.S. District Judge for
the Eastern District of Pennsylvania, sitting by designation.

ON PETITION FOR REHEARING

TJOFLAT, Circuit Judge:

On petition for rehearing, appellee Herve Auguste contends

1

that, in our initial disposition of this appeal, see Auguste v. Attorney Gen., 118 F.3d 723 (11th Cir. 1997), we erred in holding that the federal courts hold no jurisdiction over the appeals of transitional claimants--that is, claimants whose cases were pending upon the effective date of recent amendments to the Immigration and Nationality Act ("INA")--such as himself. We conclude that Auguste's protest regarding our jurisdictional holding is correct, and therefore grant the petition for rehearing and modify our earlier opinion. We then address the Government's appeal on the merits and hold that the district court erred in finding that Auguste's waiver of his right to a deportation proceeding was insufficient.

I.

Under the Visa Waiver Pilot Program ("VWPP"), see 8 U.S.C. § 1187 (1994); see also 8 U.S.C.A. § 1187 (West supp. 1998), an alien from a qualifying country who meets certain requirements not relevant here may enter the United States without a visa for no more than ninety days if the alien waives "any right . . . to contest, other than on the basis of an application for asylum, any action for deportation against the alien." 8 U.S.C. § 1187(b)(2)(1994).[1] On October 13, 1994, Auguste entered the

---

[1] For reasons given in the text, we review Auguste's petition under the INA as it existed prior to the extensive amendments passed in 1996.

United States pursuant to the VWPP after signing a waiver form.[2]
He remained in the United States beyond the authorized ninety-day
period, which expired on January 12, 1995.  While in the country,
he obtained a fraudulent work permit and Social Security card and
signed a contract to purchase a hotel in Pompano Beach, Florida,
for $7.3 million.

The Border Patrol eventually located Auguste at his Florida
residence and took him into custody on September 4, 1995.  That
day, Walter Cadman, District Director of the INS, issued an order
of deportation because Auguste had violated the conditions of his
admission to the United States under the VWPP by staying beyond
ninety days.  No hearing was held, in conformity with the
procedures outlined in the INS regulations that were promulgated
pursuant to the VWPP.[3]  Cadman scheduled Auguste's deportation

---

[2]  The waiver provision of that form read as follows:

WAIVER OF RIGHTS: I hereby waive any rights to review
or appeal of an immigration officer's determination as
to my admissibility, or to contest, other than on the
basis of an application for asylum, any action in
deportation.

CERTIFICATION: I certify that I have read and
understood all the questions and statements on this
form.  The answers I have furnished are true and
correct to the best of my knowledge and belief.

[3]  These regulations state, in relevant part:

An alien who has been admitted to the United States
under the provisions of [the VWPP] who is determined by
an immigration officer to be deportable from the United
States . . . shall be removed from the United States to
his or her country of nationality or last residence.
Such removal for deportation shall be determined by the
district director who has jurisdiction over the place
where the alien is found, and shall be effected without

3

for September 12, 1995.

On September 12, Auguste filed a petition for review of his deportation, pursuant to 8 U.S.C. § 1105a (1994),[4] in the District Court for the Southern District of Florida.  He alleged, inter alia, that his waiver of any right to a deportation hearing was not "knowing and intelligent."  The district court granted a stay of deportation and, after conducting emergency hearings on September 12 and 15, found "the record woefully inadequate to support a finding that Herve Auguste made an intelligent and knowing waiver of his due process right to deportation proceedings."  It therefore granted Auguste's petition and ordered that formal deportation proceedings be conducted and that

_____

> referral of the alien to an immigration judge for a
> determination of deportability . . . .

8 C.F.R. S 217.4(c) (1997).

[4]  That section provided, in relevant part, that "any alien held in custody pursuant to an order of deportation may obtain judicial review thereof by habeas corpus proceedings." 8 U.S.C. § 1105a(a)(10) (1994).  As discussed in the text, section 1105a was repealed in 1996 to eliminate review of orders of removal. See 8 U.S.C.A. § 1105a(a) (West supp. 1998).
Auguste's counsel filled out and filed a standardized form created by the Administrative Office of the United States Courts for state prisoners seeking a writ of habeas corpus under 28 U.S.C. § 2254 (1994).  On the top of the form, the number 2254 was crossed out and the number 2241 was handwritten above, suggesting that Auguste sought a writ of habeas corpus under 28 U.S.C. § 2241.
A review of the district court record reveals, however, that Auguste's petition has been consistently treated as a petition for relief pursuant to 8 U.S.C. § 1105a(a)(10).  The district court explicitly refers to Auguste's petition as a section 1105a petition in its memorandum opinion and elsewhere.  Moreover, Auguste's petition and the arguments he presented in the district court, in his appellate brief, and at oral argument on appeal all indicate that he is seeking judicial review of his deportation order under section 106 of the INA, 8 U.S.C. § 1105a (1995).

4

Auguste be released on bond pending conclusion of the proceedings.

The Attorney General appealed from this judgment. On appeal we held that the district court lacked jurisdiction to hear Auguste's petition, and that we lacked jurisdiction to hear the appeal, because of amendments to the Immigration and Nationality Act (INA) enacted in the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), Div. C, Omnibus Appropriations Act, 1997, Pub.L. No. 104-208, 1996 U.S.C.C.A.N. (110 Stat.) 3009-546 (codified in scattered sections of 8 U.S.C.), that were passed while Auguste's appeal was pending. Section 306 of the IIRIRA completely restructured judicial review of deportation orders, which were renamed "orders of removal." That section repealed section 106 of the INA, 8 U.S.C. § 1105a (1995), in its entirety, see § 306(b), 1996 U.S.C.C.A.N. (110 Stat.) at 3009-612, and replaced it with a new section 242, see § 306(a), 1996 U.S.C.C.A.N. (110 Stat.) at 3009-607 to -612 (codified at 8 U.S.C. § 1252, see 8 U.S.C.A. § 1252 (West Supp. 1998)). Amended section 242(g), titled "Exclusive Jurisdiction," now states:

> Except as provided in this section and notwithstanding any other provision of law, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under [the INA].

Pub.L. No. 104-208, § 306(a)(2), 1996 U.S.C.C.A.N. (110 Stat.) at 3009-612 (codified at 8 U.S.C. § 1252(g), see 8 U.S.C.A. § 1252

5

(West Supp. 1998)).  This provision is made applicable "without limitation to claims arising from all past, pending, or future exclusion, deportation, or removal proceedings under" the INA.[5] Pub.L. No. 104-208, § 306(c)(1), 1996 U.S.C.C.A.N. (110 Stat.) at 3009-612.

The new section 242(g) went into effect on April 1, 1997. See INS v. Yang, 519 U.S. 26, --- n. 1, 117 S.Ct. 350, 352 n. 1, 136 L.Ed.2d 288 (1996); Ramirez-Centeno v. Wallis, 957 F.Supp. 1267, 1269 (S.D.Fla. 1997).  As stated supra, pursuant to the IIRIRA, section 242(g) applies "without limitation to claims arising from all past, pending, or future exclusion, deportation, or removal proceedings under [the INA]." § 306(c)(1), 1996 U.S.C.C.A.N. (110 Stat.) at 3009-612.  Auguste's petition is clearly a "claim by [an] alien arising from the decision ... by the Attorney General to ... execute removal orders against [the] alien under" the INA, as contemplated by section 242(g).  We therefore held, in our initial opinion, that since April 1, 1997, no court has had jurisdiction to review Auguste's deportation order, except as provided by newly amended 8 U.S.C. § 1252.

Under section 1252, as amended by the IIRIRA, judicial review of orders of removal may only be initiated in a court of appeals.  See 8 U.S.C. §§ 1252(a)(1), 1252(b)(2) (West supp.

---

[5]  We conclude that the reference to "such Act" at the end of this section is a reference to the INA and not to the IIRIRA because a "past proceeding," by definition, could not have arisen under the new act.

6

1998).  Auguste did not comply with this procedure,[6] as he filed his petition with the district court.[7]  We therefore held that the district court lacked jurisdiction to hear Auguste's petition, and that we lacked jurisdiction over this appeal.  See Auguste, 118 F.3d at 725-27.

On petition for rehearing, Auguste points to section 309(c) of the IIRIRA, which provides as follows:

(c) TRANSITION FOR ALIENS IN PROCEEDINGS--

(1) GENERAL RULE THAT NEW RULES DO NOT APPLY.--Subject to the succeeding provisions of this subsection, in the case of an alien who is in exclusion or deportation proceedings as of the title III-A effective date--
(A) the amendments made by this subtitle shall not apply, and
(B) the proceedings (including judicial review thereof) shall continue to be conducted without regard to such amendments.

Pub.L. No. 104-208 § 309(c), 1996 U.S.C.C.A.N. (110 Stat.) at 3009-625 (emphasis added).  Auguste argues that this section carves out an exception to section 306(g)'s general abrogation of the federal courts' jurisdiction over deportation proceedings not conducted pursuant to 8 U.S.C. § 1252.  We agree.  We therefore hold that, pursuant to section 309(c) of the IIRIRA, we retain

_____

[6] We presume, without deciding, that the new judicial review scheme applies to orders of removal issued pursuant to the VWPP; as discussed in the text, however, we review Auguste's appeal under the pre-IIRIRA statutes.  Whether or not judicial review under 8 U.S.C. § 1252 is available for aliens who are ordered removed pursuant to the VWPP, it is clear that no other form of judicial review is authorized.

[7] This "mistake" was certainly not Auguste's or his counsel's fault: the IIRIRA was not enacted until September 30, 1996, more than a year after Auguste filed his petition pursuant to the then-in-force judicial review procedures of the INA.

7

jurisdiction to review deportation proceedings for aliens whose proceedings were pending on April 1, 1997.

## II.

Because we conclude that we do have jurisdiction over this appeal, we now address the merits of the appeal. As noted supra, Auguste filed a petition for a writ of habeas corpus in the district court, alleging that his waiver of any right to a deportation hearing was not "knowing and intelligent," as is generally required of waivers of constitutional rights in criminal proceedings. See Illinois v. Rodriquez, 497 U.S. 177, 183, 110 S.Ct. 2793, 2798, 11 L.Ed.2d 148 (1990).

The district court agreed and therefore granted Auguste's petition. The court ordered that formal deportation proceedings be conducted and that Auguste be released on bond pending conclusion of the proceedings. The Attorney General appeals from this judgment. We conclude that the district court erred in assuming that Auguste was entitled to any deportation hearing at all, such that Auguste's waiver of his right to a deportation proceeding would have to be "knowing and intelligent."[8]

Congress' power to regulate the treatment of aliens is plenary. Although the Constitution contains no direct mandate regarding immigration matters, the federal courts have long

---

[8] We review this question de novo. See United States v. Moya, 74 F.3d 1117, 1119 (11th Cir. 1996) (reviewing de novo legal conclusions involved in determination that alien was entitled to Miranda warnings).

8

recognized that the political branches of the federal government have plenary authority to establish and implement substantive and procedural rules governing the admission of aliens to this country.  See Jean v. Nelson, 727 F.2d 957, 964 (11th Cir. 1984) (en banc), citing Chae Chan Ping v. United States (The Chinese Exclusion Case), 130 U.S. 581, 609, 9 S.Ct. 623, 631, 32 L.Ed. 1068 (1889).  "[T]he responsibility for regulating the relationship between the United States and our alien visitors has been committed to the political branches [as opposed to the judicial branch] of the Federal Government.  Over no conceivable subject is the legislative power of Congress more complete." Reno v. Flores, 507 U.S. 292, 305, 113 S.Ct. 1439, 1449, 123 L.Ed.2d 1 (1993) (internal quotation marks and citations omitted).[9]  "The power to expel aliens, being essentially a power of the political branches of government, the legislative and the executive, may be exercised entirely through executive officers, with such opportunity for judicial review of their action as Congress may see fit to authorize or permit."  Carlson v. Landon,

_____

[9]  We note that this case does not involve a petition for the Great Writ protected by the Constitution, see U.S. Const., art. I, § 9, cl. 2 ("The Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it."), and codified by 28 U.S.C. § 2241 (1994).  While Auguste's petition below was labeled "§ 2241," it clearly sought judicial review of an INS decision. See supra note 3. Indeed, Auguste freely admits that he is an alien who was admitted into the country under the provisions of an immigration statute, specifically the VWPP, and that his current detention and imminent deportation are authorized by that same statute.  He also does not assert that District Director Cadman's order of deportation was not entered in accordance with law.  We find it difficult to imagine a court granting the Great Writ under these circumstances.

9

342 U.S. 524, 537, 72 S.Ct. 525, 532-33, 96 L.Ed. 547 (1952) (internal quotation marks omitted).

Congress and the INS have provided some aliens with deportation proceedings. See 8 U.S.C.A. §§ 1225(b)(2)(A), 1229 (1997). Under the Visa Waiver Pilot Program, however, Congress and the INS do not provide deportation or removal hearings to VWPP aliens who have overstayed the authorized ninety-day period; instead, the INS district director handles the case and issues the order of deportation. See supra note 2. With the Visa Waiver Pilot Program, Congress has created a set of expeditious procedures for the processing of certain aliens--visitors, such as tourists and business travelers. Thus, any rights to a deportation or removal hearing, and to any sort of process at such a hearing, that VWPP aliens might have are wholly statutory and administrative, granted by the Congress (through the INA) and the INS[10]--and those authorities have decided not to grant any such rights. We therefore conclude that the district court erred in assuming that VWPP aliens are entitled to the same deportation

---

[10] In the parlance of the field, VWPP aliens are thus "excludable" aliens and not "deportable" aliens. See Kwong Hai Chew v. Colding, 344 U.S. 590, 600, 73 S.Ct. 472, 479, 97 L.Ed. 576 (1953) ("'excludable' aliens ... are not within the protection of the Fifth Amendment"); see also, e.g., 8 U.S.C. § 1187(a)(3)(A) (1990) (requiring that the VWPP waiver form provide "a summary description of the conditions for excluding nonimmigrant visitors from the United States . . . under the program") (emphasis added). That the procedures by which VWPP aliens are removed from the country were referred to by the pre-1996 INA as "deportation" proceedings was, we think, merely an unfortunate misnomer. Whether such proceedings are referred to as exclusion proceedings, deportations, or (as under the INA as amended by the IIRIRA) removal proceedings does not change the analysis.

10

or removal proceedings that other aliens are entitled to.

Congress has specified, by statute, that the VWPP waiver shall be obtained with the use of a waiver form.  See 8 U.S.C. § 1187(b)(3)(B) (1990) (repealed 1990) (directing Attorney General to develop a form providing for a waiver under the pilot program); 8 U.S.C. § 1187(a)(3) (West supp. 1998) (requiring that VWPP aliens complete the waiver form).  Moreover, by providing no adversarial hearing for the purpose of determining whether a VWPP alien knowingly and intelligently executed the waiver, Congress and the INS have expressed an intention that the mere execution of the VWPP waiver form would conclusively establish a knowing and voluntary waiver.[11]  This is consistent with the political branches' plenary authority to establish the procedures for admitting and excluding aliens.  Because, in the absence of any constitutional concerns, Congress' power over immigration regulation is plenary, we defer to Congress' judgment.

Accordingly, we REVERSE the judgment of the district court.


    SO ORDERED.

---

    [11]  Auguste has made no claim that the substantive component of the Due Process Clause obligates Congress to establish a forum in which he could litigate the question whether his waiver was knowing and voluntary.