**Juliet Lagundino FREEMAN, aka Juliet Lagundino Branagan, aka Juliet Tuya Lagundino, aka Juliet Lagundino Moniz, Petitioner,**

v.

**John ASHCROFT, Attorney General,\* Respondent.**

No. 02–72964.

Agency No. A41–237–600.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 3, 2003.

Decided Jan. 12, 2004.

---

\* The court sua sponte changes the docket to reflect that John Ashcroft, Attorney General, is the proper respondent. The Clerk shall amend the docket to reflect the above caption.

Gary G. Singh, Law Office of Gary G. Singh, Honolulu, HI, for Petitioner.

Regional Counsel, Laguna Niguel, CA, HI–District Counsel, Office of the District Counsel, Honolulu, HI, Ronald E. Le-Fevre, Chief Legal Officer, Office of the District Counsel, San Francisco, CA, Richard M. Evans, David Dauenheimer, DOJ–U.S. Department of Justice, Washington, DC, for Respondent.

Before PAEZ, BERZON, and BEA, Circuit Judges.

## MEMORANDUM**

Juliet Lagundino Freeman ("Freeman"), a native and citizen of the Philippines, petitions for review of the decision of the Board of Immigration Appeals ("BIA") affirming the Immigration Judge's ("IJ") denial of suspension of deportation, voluntary departure, a misrepresentation waiver, and a "good faith" hardship waiver under 8 U.S.C. § 1186a(c)(4)(B) (1994).[1] Because the transitional rules of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA") apply, see *Kalaw v. INS*, 133 F.3d 1147, 1150 (9th Cir.1997), we have jurisdiction under 8 U.S.C. § 1105a, as amended by IIRIRA

§ 309(c)(4). Because the BIA adopted the IJ's reasoning, we review the BIA's decision, along with the reasons specified by the IJ. See *Molina–Estrada v. INS*, 293 F.3d 1089, 1093 (9th Cir.2002) ("Where ... the BIA has reviewed the IJ's decision and incorporated portions of it as its own, we treat the incorporated parts of the IJ's decision as the BIA's."). We deny the petition for review.

Because the parties are familiar with the factual and procedural background, we do not repeat it here. We review factual findings under the substantial evidence standard. *INS v. Elias–Zacarias*, 502 U.S. 478, 481, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992). The agency's determination "must be upheld if supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Id.* (internal quotations omitted). We review for substantial evidence the BIA's determination that a marriage was not entered into in good faith. See *Roe v. INS*, 771 F.2d 1328, 1331 (9th Cir.1985). "Whether a petitioner falls into one of the[ ] per se categories [of 8 U.S.C. § 1101(f), setting forth persons deemed to lack good moral character,] depends upon findings of fact, which we review for substantial evidence." *Kalaw*, 133 F.3d at 1151; see also *Ramos v. INS*, 246 F.3d 1264, 1266 (9th Cir.2001). The discretionary denial of a misrepresentation waiver may be overturned if it is arbitrary, capricious, or an abuse of discretion. See *INS v. Yang*, 519 U.S. 26, 32, 117 S.Ct. 350, 136 L.Ed.2d 288 (1996).

### 1. Good Faith Waiver

Freeman contends that there is no substantial evidence in the record to support the IJ's finding that she did not have a good faith marriage to her first husband,

---

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

1. Freeman does not appeal the IJ's denial of an extreme hardship waiver under 8 U.S.C. § 1186a(c)(4)(A) or a battered spouse waiver under 8 U.S.C. § 1186a(c)(4)(C).

and that she is therefore eligible for a waiver of the requirement to file a joint petition to remove the condition on her residency. *See* 8 U.S.C. § 1186a(c)(4)(B) (waiving requirement to file a joint petition for removal of the conditions on residence if applicant can establish that she entered into marriage in good faith). This contention lacks merit. The key inquiry is whether Freeman intended "to establish a life together [with her first husband] at the time they were married." *Bark v. INS*, 511 F.2d 1200, 1201 (9th Cir.1975). The couple married one or two days after their first face-to-face meeting; they stayed together in the Philippines for three weeks; and they never lived together once Freeman arrived in the United States. Reviewing the record, we find that substantial evidence supports the IJ's conclusion that Freeman entered into her former marriage solely to obtain immigration benefits, and not because she intended to establish a life together with her first husband. *Roe*, 771 F.2d at 1331. Accordingly, the BIA did not err by denying Freeman's request for a good faith waiver under 8 U.S.C. § 1186a(c)(4)(B).

## 2. Suspension of Deportation and Voluntary Departure

Freeman contends that the BIA erred by finding her ineligible for suspension of deportation and voluntary departure under former 8 U.S.C. § 1254(a) and (e) (1994) (now repealed), based on the finding that Freeman presented false testimony during her immigration hearing. Freeman also contends that the false testimony finding is incorrect because the alleged misrepresentations did not go to the "heart of the claim" that she had bona fide intent at the time of her marriage. We disagree.

An applicant for suspension of deportation or voluntary departure must show that she is a person of good moral character. *See* 8 U.S.C. § 1254(a) and (e). An individual cannot establish good moral character if she gives false oral testimony under oath, with a "subjective intent to deceive for the purpose of obtaining immigration benefits." *Ramos*, 246 F.3d at 1266; *see also* 8 U.S.C. § 1101(f)(6) (1994).

■ The IJ found that Freeman presented false testimony during her immigration hearing based on the internal inconsistencies in her testimony, and the discrepancies between her testimony and her prior sworn statements to the INS. The record shows that Freeman gave inconsistent accounts regarding: (1) whether she notified her former husband of her arrival plans; and (2) the reasons Freeman did not live with her husband once she arrived. Accordingly, substantial evidence supports the agency's determination that Freeman testified falsely in order to obtain a good faith waiver.[2] Moreover, the false testimony bar does not "distinguish between material and immaterial misrepresentations." *Kungys v. United States*, 485 U.S. 759, 779, 108 S.Ct. 1537, 99 L.Ed.2d 839 (1988). Accordingly, the BIA did not err by denying suspension of deportation and voluntary departure.

## 3. Misrepresentation Waiver

Relying on her argument, rejected above, that the IJ erred in determining that she gave false testimony, Freeman also contends that the IJ's denial of a misrepresentation waiver under former 8 U.S.C. § 1251(a)(1)(H) (1994) (now codified at 8 U.S.C. § 1227(a)(1)(H)), must be overturned. The IJ did not abuse his discre-

---

**2.** The IJ also based his negative credibility finding, in part, on Freeman's demeanor during the hearing. Because the IJ did not "specifically and cogently refer to any aspect of [Freeman's] demeanor," we do not rely on the demeanor finding here. *Arulampalam v. Ashcroft*, 353 F.3d 679, 685–86 (9th Cir.2003).

tion in denying a misrepresentation waiver on the basis of Freeman's false testimony. In exercising his discretion, the IJ may properly consider the circumstances of the initial immigration fraud as well as "any other additional evidence of the alien's bad character or undesirability as a lawful permanent resident of the United States." *In re Tijam*, 22 I. & N. Dec. 408, 1998 WL 883735 (BIA 1998) (stating that "[a] finding of false testimony under oath ... is [ ] considered an extremely serious adverse factor"); *see also Yang*, 519 U.S. at 32 (holding that the Attorney General may properly consider an applicant's pattern of fraud in denying a waiver under § 1251(a)(1)(H)). Accordingly, we conclude that the BIA did not err in denying Freeman's application for a misrepresentation waiver.

**PETITION FOR REVIEW DENIED.**