

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-26-2004

# Ventosa v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 03-1148

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Ventosa v. Atty Gen USA" (2004). *2004 Decisions.* Paper 977.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/977

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 03-1148

JOSE JOSON VENTOSA, JR.;
VICTORIA CRUZ VENTOSA,
                                    Petitioners

v.

JOHN ASHCROFT,
ATTORNEY GENERAL OF THE UNITED STATES,
                                    Respondent

On Petition for Review of an Order of the
Board of Immigration Appeals
(BIA Nos. A29-731-984 and A29-731-203)

Submitted Pursuant to Third Circuit LAR 34.1(a)
February 9, 2004
Before:  SCIRICA, *Chief Judge*, ROTH and McKEE, *Circuit Judges*

(Filed February 26, 2004)

OPINION OF THE COURT

SCIRICA, *Chief Judge*.

Removal proceedings were initiated against petitioners Jose Joson Ventosa, Jr. and

Victoria Cruz Ventosa.  The Immigration Judge found them removable and denied their

application for asylum and withholding of removal but granted their motion for voluntary departure. The Board of Immigration Appeals issued an affirmance without opinion. The Ventosas filed a petition for review alleging certain constitutional errors—specifically, that during the interval when the INS delayed in hearing their asylum claims, the controlling law changed to their detriment. They also allege the Immigration Judge's decision was not supported by substantial evidence.

We will deny the Ventosas' petition and affirm the BIA's order of removal.

## I

The Ventosas, native citizens of the Philippines, arrived in the United States on May 12, 1986 on visitors' visas with authorization to remain until November 11, 1986. They remained beyond that time without authorization from the INS.

On May 12, 1989, the Ventosas filed an asylum application based on fear of physical harm and death on returning to the Philippines. They subsequently filed an amended application alleging they had been persecuted on account of membership in a particular social group and on account of their political opinion. Their application alleged they were victims of extortion by the New People's Army ("NPA"), and they had been threatened by the Aquino party because they supported the Marcos Government.

The INS took no action on their asylum application until almost a decade later and on December 8, 1998, issued a Notice to Appear charging the Ventosas with removability. Appearing before an Immigration Judge, the Ventosas admitted the factual

allegations and conceded they were removable as charged. They applied for asylum, withholding of removal, and cancellation of removal. On February 17, 2000, the Immigration Judge denied their applications for relief but granted their alternative request for voluntary departure. The Immigration Judge found: (a) there was no evidence of credible past harm that rose to the level of persecution; (b) there was no evidence of future persecution if they had to return because the Aquino Government is no longer in power; and (c) the claim that the NPA was attempting to extort the Ventosas did not constitute persecution on account of political opinion.

The Ventosas appealed to the BIA. On December 19, 2002, the BIA summarily affirmed without opinion under 8 C.F.R. § 1003.1(e)(4). The Ventosas now appeal.[1]

## II

The Ventosas allege that after they had made their original asylum application in 1989, the INS implemented a "last in first out" policy for new asylum cases which left the Ventosas' claim for asylum unreviewed for almost a decade. They allege that during this period of "limbo," the applicable law changed to their detriment. On April 1, 1997, "suspension of deportation" relief, 8 U.S.C. § 1254 (repealed 1997), was replaced by "cancellation of removal" relief, 8 U.S.C. § 1229b(b), when Congress passed the Illegal

---

[1]We have jurisdiction over a petition for review of a final order of removal of the BIA under the Immigration and Nationality Act, 8 U.S.C. § 1252(a)(1). The Immigration Judge completed the proceedings in Newark, New Jersey, so venue for the petition is proper. *Id.* at (b)(2).

Immigration Reform and Immigrant Responsibility Act, Pub. L. No. 104-208 Div. C., 110 Stat. 3009 (1996) ("IIRIRA").

Under suspension of deportation relief, an alien against whom deportation proceedings had been commenced, could apply for suspension of deportation, provided he had been continuously physically present in the United States for seven years, had good moral character, and could show that deportation would work a severe hardship upon him or upon certain United States citizen relatives. *See* 8 U.S.C. § 1254 (repealed 1997). By contrast, "cancellation of removal" requires ten years of continuous presence and requires the alien to show that her removal would work a hardship upon a qualifying United States citizen or legal permanent resident spouse, child, or parent (rather than upon the alien himself). *See* 8 U.S.C. § 1229b(b). The Ventosas maintain that they qualified for suspension of deportation but are ineligible for cancellation of removal because they have no American citizen relatives. They argue that equitable estoppel should apply against the INS due to its delay in processing their asylum claims; that the INS has impermissibly retroactively applied the IIRIRA Permanent Rules to their case; and that they have been denied due process and equal protection.[2]

---

[2]Pure questions of law concerning the INA are reviewed *de novo*. *Ladha v. INS*, 215 F.3d 889, 896 (9th Cir. 2000). Alleged due process violations are also reviewed *de novo*. *Castillo-Perez v. INS*, 212 F.3d 518, 523 (9th Cir. 2000). However, we owe deference to the Attorney General's reasonable interpretation of the INA. *INS v. Aguirre-Aguirre*, 526 U.S. 415, 424-25 (1999).

4

## A. Equitable Estoppel

The Ventosas allege that the INS's delay in hearing their claim caused them to lose the right to apply for a suspension of deportation claim for relief. As a result, the Ventosas argue the INS should be equitably estopped from denying them the opportunity to apply for suspension of deportation relief.

Equitable estoppel does not lie against the government in the same manner as against private litigants. *Office of Pers. Mgmt. v. Richmond*, 496 U.S. 414, 419 (1990). "[E]stoppel requires proof of affirmative misconduct on the part of the Government, a burden not easily met." *Yang v. INS*, 574 F.2d 171, 175 (3d Cir. 1978) (citation omitted).

The approximate eight year interval it took the INS to address the Ventosas' asylum application, though an unfortunate delay, does not constitute affirmative misconduct sufficient to estop the INS from preventing the Ventosas from applying for suspension of deportation relief. *See INS v. Miranda*, 459 U.S. 14, 19 (1982) ("Proof only that the Government failed to process promptly an application falls far short of establishing [affirmative misconduct].").

## B. Impermissible Retroactive Application

The Ventosas claim that applying the permanent rules of the IIRIRA, as opposed to the transitional rules,[3] has an impermissible retroactive effect. They assert that their

---

[3] IIRIRA includes transitional rules providing that the new provisions do not apply to aliens against whom deportation proceedings were commenced prior to its effective date.

admission of unlawful status in their asylum application created a settled expectation that if asylum were denied, they would be able to request suspension of deportation relief. They claim that through their admission, they created a significant benefit to the government.

The transitional rules of IIRIRA do not apply to their claims. "[R]emoval proceedings under IIRIRA do not commence upon the initial contact between the alien and the INS. Rather, they commence when the INS files a 'charging document' with the Immigration Court." *Jimenez-Angeles v. Ashcroft*, 291 F.3d 594, 600 (9th Cir. 2002). Because the INS issued the charging documents on December 8, 1998, the Ventosas' claims are covered by the IIRIRA permanent rules which became effective April 1, 1997. *See* 8 U.S.C. § 1229b(e).

The Ventosas also contend that applying the IIRIRA rules has an impermissible retroactive effect and that they are entitled to suspension of deportation under *INS v. St. Cyr*, 533 U.S. 289 (2001). In *St. Cyr*, the alien was a lawful permanent resident who more than seven years after his entry into the United States, pled guilty to a felony pursuant to a plea bargain. His guilty plea rendered him deportable, but under the then current pre-IIRIRA law, he was eligible for waiver of deportation under former INA § 212(c), 8 U.S.C. § 1182(c) (1994). Ten days after IIRIRA became effective, the INS placed him in removal proceedings. The Supreme Court held that IIRIRA's elimination of the § 212(c) waiver of deportation could not be retroactively applied to aliens like St.

Cyr "whose convictions were obtained through plea agreements and who, notwithstanding those convictions, would have been eligible for [a § 212(c) waiver] at the time of their plea under the law then in effect." *St. Cyr*, 533 U.S. at 326. The Court held the repeal had an impermissible retroactive effect as applied to St. Cyr because his plea was predicated on the presumption he would be eligible for § 212(c) waiver. *See id.* at 321 ("Plea agreements involve a *quid pro quo* between a criminal defendant and the government."). Having engaged in a bargaining process with the government in which he "waive[d] several of [his] constitutional rights (including the right to a trial) and grant[ed] the government numerous tangible benefits, such as promptly imposed punishment without the expenditure of prosecutorial resources," *id.* at 322 (internal quotations omitted), St. Cyr reasonably relied on the fact that his plea would preserve his eligibility for a § 212(c) waiver of deportation. He had a settled expectation that the waiver would be available to him, and he reasonably believed there was a substantial chance of having the waiver granted, given the high rate of success for § 212(c) waiver applications. *See id.* at 322-23.

The Court of Appeals for the Ninth Circuit has addressed how *St. Cyr* affects aliens who lost the right to apply for suspension of deportation relief after the passage of IIRIRA. We find their analysis apposite. In *Jimenez-Angeles v. Ashcroft*, 291 F.3d 594, 599 (9th Cir. 2002), the court rejected a claim by an alien "that she [wa]s like the alien in *St. Cyr*, who pled guilty prior to IIRIRA's effective date in reliance on the possibility of §

7

212(c) [suspension of deportation] relief, in that she revealed her status to the INS prior to April 1, 1997 in reliance on the availability of suspension of deportation." *Id.* at 600 (citation omitted) (internal quotations omitted). The court concluded that her circumstances differed significantly from those in *St. Cyr*; "[t]he factors that militated in favor of *St. Cyr*—in particular, his 'settled expectations' based on 'transactions or considerations already past'—are not present in Jimenez-Angeles' case." *Id.* at 602. The court noted: "When St. Cyr entered into his plea bargain, he gave up valuable legal rights, including his right to trial by jury. By contrast, when Jimenez-Angeles revealed herself to the INS, she gave up only her ability to continue living illegally and undetected in the United States." *Id.*

The Ventosas rely on *St. Cyr* for the proposition that when they admitted their unlawful status in their asylum applications prior to the enactment of IIRIRA, they had a settled expectation that, if asylum were denied, they would be able to request suspension of deportation relief. Accordingly, they urge that as in *St. Cyr*, the government should be denied from retroactively applying the new provisions of IIRIRA against them.

The Ventosas' reliance on *St. Cyr* is misplaced. In contrast to permanent resident alien St. Cyr, they, like Jimenez-Angeles, are in the country without lawful status. The transaction for which the Ventosas claim a retroactive effect was their voluntary contact with the INS to apply for a benefit. The Ventosas did not give up a constitutional right when they filed their asylum applications and conceded they were aliens; they gave up

8

only their ability to continue living illegally and undetected in the United States.  Their

concession of alienage is not the sort of "exchange" or "tangible benefit" contemplated by

the Court in *St. Cyr* because the question of alienage is rarely challenged or litigated.

Because there was neither negotiation with the government nor adequate *quid pro quo*,

the Ventosas' concession of alienage does not cause Congress's repeal of suspension of

deportation as applied to the Ventosas to be impermissibly retroactive.

## C. Due Process

The Ventosas also claim that application of the IIRIRA permanent rules violates

due process.  The Ventosas are correct in contending that aliens within the United States

may not be deprived of liberty or property without due process of law.  *Matthews v. Diaz*,

426 U.S. 67, 77 (1976).  But aliens must in the first instance possess a liberty or property

interest.  *See Bd. of Regents v. Roth*, 408 U.S. 564, 569-71 (1972).  Aliens who seek only

discretionary relief from deportation have no constitutional right to receive that relief.

Rather, the ability of such aliens to remain in the United States is a matter of "permission

and tolerance."  *Harrisiades v. Shaughnessy*, 342 U.S. 580, 586-87 (1952).  The "failure

to be granted discretionary relief does not amount to deprivation of liberty interest."

*Huicochea-Gomez v. INS*, 237 F.3d 696, 700 (6th Cir. 2001).

Suspension of deportation is a form of discretionary relief.  The Supreme Court

characterized suspension of deportation as an "act of grace" that, like a Presidential

pardon, is extended in the Attorney General's "unfettered discretion."  *INS v. Yueh-Shaio*

*Yang*, 519 U.S. 26, 30 (1997) (internal quotations omitted). "No constitutionally protected interest arises from the INS's actions in granting or denying applications for suspension because the Attorney General exercises 'unfettered' discretion over applications for suspension." *Tefel v. Reno*, 180 F.3d 1286, 1301 (11th Cir. 1999). Moreover, the Ventosas' attempt to argue that their constitutional injury stems, not from being denied suspension of deportation, but from being rendered ineligible to be considered for suspension fails. This "argument draws a distinction without a constitutional difference. Where no deprivation of a liberty or property interest has occurred, no violation of procedural due process has occurred." *Id.* Accordingly, we conclude the Ventosas had no liberty or property interest in the grant of such relief, and their due process challenge to the effects of Congress's repeal fails.

**D. Equal Protection**

The Ventosas argue there is no rational basis for giving felons like St Cyr relief under the pre-IIRIRA law and denying it for law-abiding aliens like them. They argue to do so constitutes an equal protection violation. But equal protection "does not require things which are different in fact or opinion to be treated in law as though they were the same." *Plyler v. Doe*, 457 U.S. 202, 216 (1982) (internal quotations omitted). We have already demonstrated that the Ventosas are not similarly situated to aliens like St. Cyr who had settled expectations due to a plea bargain. Accordingly, the Ventosas' equal protection claim fails.

### III

The Ventosas claim that the evidence in the record compels the conclusion that the BIA's conclusions were erroneous because it shows that they had a well-founded fear of persecution on account of their political opinions.

Where the BIA adopts the Immigration Judge's decision as its own, we review the Immigration Judge's decision as the final decision of the agency. *Gao v. Ashcroft*, 299 F.3d 266, 271 (3d Cir. 2002). Whether the Ventosas have demonstrated past persecution or a well-founded fear of future persecution are factual determinations reviewed under the substantial evidence standard. *See INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992) (The determination must be upheld if "supported by reasonable, substantial, and probative evidence on the record considered as a whole.") (internal quotations omitted). Under this deferential standard, the findings must be upheld unless the evidence not only supports a contrary conclusion, "but *compels* it." *Id.* at n.1 (emphasis in original).

Substantial evidence in the record supports the Immigration Judge's determination that the Ventosas did not establish past persecution on account of any statutorily-protected grounds or a well-founded fear of persecution if they return to the Philippines. The Immigration Judge had considerable evidence in the record upon which to base the conclusions that the Ventosas failed to prove that the NPA or the Aquino government persecuted or will persecute them on account of their political opinions. We find no error.

11

**IV**

For the foregoing reasons, we will affirm the BIA's final order of removal and deny the Ventosas' petition.