# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 04-1425

_____

| | | |
|---|---|---|
| Nur Hussein Begna, | * | |
| | * | |
| Petitioner, | * | |
| | * | |
| v. | * | Petition for Review of an Order of |
| | * | the Board of Immigration Appeals. |
| John Ashcroft, | * | |
| Attorney General of the | * | |
| United States, | * | |
| | * | |
| Respondent. | * | |

_____

Submitted: November 19, 2004
Filed: December 16, 2004

_____

Before MURPHY, LAY, and MELLOY, Circuit Judges.

_____

MURPHY, Circuit Judge.

Nur Hussein Begna, a native and citizen of Ethiopia, entered the United States with a forged passport. An immigration judge (IJ) denied his request for asylum and related relief, and the Board of Immigration Appeals (BIA) issued a summary affirmance. Begna now petitions for review of the BIA's order.

Begna was born in 1971 in Addis Ababa, Ethiopia. By his account, his father is of Eritrean descent and his mother is of Oromo descent. He testified that his brother and sister were executed by the Dergue regime in 1980 because of their

political beliefs. His brother was killed in front of the family home by a man from the neighborhood, and Begna witnessed the execution. The Dergue government fell from power in 1991, and in 1992 the new government encouraged citizens to report crimes committed by the predecessor regime. According to Begna he reported his brother's execution, but an official related to his brother's killer warned him several times not to pursue the matter and had others make threatening phone calls to him. He was allegedly told that there would be problems for him and his family because of their Oromo heritage and possible ties to the Oromo Liberation Front.

Begna testified that he went into hiding to avoid being arrested. According to his asylum application, he worked during that time as the warehouse manager of his family's spare auto parts business. He testified that police came to the shop several times, but he eluded them by going out the unguarded back door. During this period when he claimed he was hiding, he also obtained a birth certificate from a government office.

In 1998 the war between Ethiopia and Eritrea broke out, and the Ethiopian government began deporting persons of Eritrean descent. Begna testified that his father and sister were removed from the family home while he was away and that he does not know where they are. He went to live with his mother's relatives in western Oromia. In 1999, however, he initiated contact with the Ethiopian government by checking on the status of the investigation into his brother's killing and by applying for a passport, which was denied.

Begna claims to have purchased a forged passport with a fake name for the equivalent of $4,375. He says he flew from Addis Ababa to Frankfurt and then on to Toronto, where he was met by a woman who drove him to Detroit on September 27, 2001. He claims to have given the false passport to this woman, with the understanding that the smugglers would refund about $700 to his mother. He says that he has no documentation of his trip, but he did bring his birth certificate with

him.  After taking up residence with a friend in St. Paul, Begna received a letter from a friend in Ethiopia stating that officials had questioned his mother about where he was living.

Begna was served with a notice to appear on March 15, 2002.  He conceded that he was subject to removal and sought asylum or withholding of removal under the Immigration and Nationality Act (INA) or the Convention Against Torture.  The IJ found his uncorroborated testimony about persecution not credible and also concluded that Begna had not established that he had been in the United States for less than a year at the time of his asylum application.  For these reasons, the IJ denied relief and ordered Begna removed to Ethiopia.  The BIA affirmed without opinion.  Begna argues that the IJ erred by not granting him relief because he satisfied the required standards.  He also argues that his due process rights were violated by the BIA's summary affirmance process.

The INA authorizes the Attorney General to grant asylum to an alien who is a refugee within the meaning of the Act.  8 U.S.C. § 1558 (b)(1).  A refugee is a person outside of his country of origin who is unwilling or unable to return to that country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion."  8 U.S.C. § 1101(a)(42).  Absent changed or extraordinary circumstances, an alien is not eligible for asylum unless he demonstrates by clear and convincing evidence that he has filed an asylum application within one year of his arrival in the United States.  8 U.S.C. § 1158(a)(2).

The IJ determined that Begna had not shown that he had been in the United States for less than a year before filing his application for asylum.  The IJ found there was no credible evidence that Begna traveled to the United States by way of Germany and Canada in September 2001 or that he was outside of the United States immediately prior to his alleged immigration.  We treat the IJ's findings as those of

-3-

the BIA in this case because it affirmed without a written opinion. See 8 C.F.R. § 1003.1(a)(7); Dominguez v. Ashcroft, 336 F.3d 678, 679 n.1 (8th Cir. 2003). Since BIA decisions concerning the timeliness of asylum applications are not subject to judicial review, see 8 U.S.C. § 1158(a)(3); Ismailov v. Reno, 263 F.3d 851, 855 (8th Cir. 2001), the IJ's finding that Begna is ineligible for asylum because of an untimely application is controlling.[1]

An alien seeking withholding of removal under the INA will be granted relief if "the Attorney General decides that the alien's life or freedom would be threatened in [the country designated for removal] because of the alien's race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A). An alien seeking withholding of removal because he fears future threats to his life or freedom must demonstrate that it is more likely than not that he would be persecuted if removed to the designated country. 8 C.F.R. § 1208.16(b)(2). Likewise, an alien seeking withholding of removal under the Convention Against Torture has the burden of showing that he would more likely than not be tortured if removed. 8 C.F.R. § 1208.16(c)(2).

The IJ determined that Begna did not demonstrate a likelihood that he would be persecuted or tortured if returned to Ethiopia. The IJ found Begna's claims not credible because his uncorroborated testimony was implausible. The IJ did not believe that Begna was genuinely hiding from government officials because during the time he claimed to be in hiding he continued to work in the family business and contacted authorities to obtain a birth certificate and to check on the status of the investigation into his brother's killing. The IJ also doubted Begna's Eritrean heritage, noting that he went to government offices during the period when the Ethiopian

---

[1]The IJ also held that Bega was ineligible for asylum on an alternative ground – that his claims were implausible. We discuss the IJ's concerns about the credibility of Begna's uncorroborated testimony in connection with Begna's request for withholding of removal.

government was deporting persons of Eritrean descent and that there is no indication independent of Begna's testimony that his father has ties to Eritrea. The fact that Begna brought his birth certificate with him when he was allegedly trying to conceal his identity with a fake passport also troubled the IJ, as did the fact that the letter he submitted from a friend in Ethiopia was correctly addressed to his St. Paul residence and Begna could not explain how she had this information.

We affirm a BIA's decision to deny relief if it is supported by substantial evidence in the record as a whole, see Perinpanathan v. INS, 310 F.3d 594, 597 (8th Cir. 2002), and we defer to an IJ's credibility finding so long as it is supported by "a specific, cogent reason for disbelief." Id. at 597 (internal quotation marks and citation omitted). In this case there is ample evidence in the record to support the IJ's findings and conclusions. The IJ did not simply assert that Begna's testimony was not credible but gave specific reasons to doubt his claims. We conclude that the IJ did not err by refusing to grant Begna relief under his claim for withholding of removal.

Begna also argues that he was denied his due process rights by the BIA's summary affirmance of the IJ's ruling. He complains that incomplete explanations from the BIA frustrates appellate review, citing Guan Shan Liao v. United States Department of Justice, 293 F.3d 61, 64 (2d Cir. 2002). He is particularly concerned with the BIA's failure to evaluate the IJ's adverse credibility assessment and cites Diallo v. INS, 232 F.3d 279, 287 (2d Cir. 2000), to support this complaint. The court in Diallo found that the IJ was "plainly in error" to impugn the credibility of the petitioner's testimony, id., which is not the record here. Furthermore, neither of these cases from the Second Circuit dealt with a summary affirmance.

Our court has ruled that the BIA's use of a summary affirmance process does not itself violate petitioners' due process rights. Ngure v. Ashcroft, 367 F.3d 975, 981 (8th Cir. 2004). Begna "received a full hearing before an IJ, a detailed and reasoned opinion from the IJ, an opportunity to present arguments to the BIA, and a

decision from a BIA member." Loulou v. Ashcroft, 354 F.3d 706, 709 (8th Cir. 2003). We conclude that Begna's due process rights were not violated.

For these reasons the petition is denied.

LAY, Circuit Judge, concurring.

I concur in the judgment. I agree that this court lacks jurisdiction to review Petitioner Begna's denial of asylum for failure to prove, by clear and convincing evidence, that Begna applied for asylum within one year of entering the country. See 8 U.S.C. § 1158(a)(3). Further, the record does not contain evidence sufficient to demonstrate that Begna is "more likely than not" to suffer persecution or torture were he to be removed to Ethiopia. Thus, he is not eligible for withholding of deportation pursuant to the Immigration and Nationality Act, 8 C.F.R. § 1208.16(b)(1)(B)(iii), or for protection under the Convention Against Torture, see id. at § (c)(2).

I also agree that Begna's due process claims are without merit. It is settled that when a single Board of Immigration Appeals (BIA) member affirms, without opinion, an immigration judge's (IJ) decision, this does not, per se, violate an asylum petitioner's due process rights. See, e.g., Loulou v. Ashcroft, 354 F.3d 706, 708 (8th Cir. 2003) (stating that the Eighth Circuit joins other "circuits in concluding the streamlined review procedure does not violate an alien's due process rights" because an alien "has no constitutional or statutory right to an administrative appeal"), amended by 2004 U.S. App. LEXIS 8347 (8th Cir. 2004). The BIA possesses authority to "streamline" its duties of review in this manner, rather than submitting every appeal to a three-member review and opinion process. See 8 C.F.R. § 1003.1(e)(4). Accordingly, the bare assertion that streamlined review violates the Due Process Clause because it "frustrates" the review process is without merit.

This does not mean, however, that streamlined review is always appropriate. The BIA's authority to implement streamlined review is limited to cases that meet the following criteria:

> (1) the individual BIA member must decide that the result reached by the IJ was correct; and

> (2) the individual BIA member must decide that any errors made by the IJ, if any, were "harmless or nonmaterial"; and

> (3) the issues on appeal must either be (A) "squarely controlled by existing [BIA] or federal court precedent" and must "not involve the application of precedent to a novel factual situation," or (B) "the factual and legal issues raised on appeal" must not be "so substantial" as to warrant a written opinion.

See id. If the BIA applies streamlined review to cases falling outside of these three scenarios, then its decision to do so is subject to judicial review, and can be vacated as "arbitrary and capricious" or as an abuse of discretion pursuant to the Administrative Procedure Act (APA).[2] See Smriko v. Ashcroft, 387 F.3d 279, 2004 U.S. App. LEXIS 22263, *31-34, *40-41 (3d Cir. 2004) (citing the APA, 5 U.S.C. § 706(A)(2) and INS v. Yueh-Shaio Yang, 519 U.S. 26, 32 (1996)); see also Yueh-Shaio Yang, 519 U.S. at 32 (holding that a decision by the BIA can be overturned as arbitrary and capricious, or as an abuse of discretion, where that decision makes an irrational departure from its own rules or policies).

Eighth Circuit precedent holding to the contrary is ill-reasoned and should be overturned. See Ngure v. Ashcroft, 367 F.3d 975, 983 (8th Cir. 2004) (holding that the BIA's decision to employ the streamlining procedure "is committed to agency

---

[2]However, a challenge mounted against the BIA's summary affirmance on these grounds does not, as a technical matter, implicate a petitioner's due process rights.

discretion and not subject to judicial review" as a matter of law); see also Wolde v. Ashcroft, 2004 U.S. App. LEXIS 16080, \*\*2 (8th Cir. 2004) (unpublished) (same); but cf. Smriko, 2004 U.S. App. LEXIS 22263, \*31-46 (explaining why judicial review is available and rebutting the reasoning in Ngure at length).[3] "All but one of the other Circuit Courts [i.e., the Eighth Circuit] that have addressed the issue have agreed or suggested that the affirmance without opinion regulations" are not committed to agency discretion because the application regulations "contain sufficient 'law' to provide a 'meaningful standard against which to judge the agency's exercise of discretion.'" See Smriko, 2004 U.S. App. LEXIS 22263 at \*41.[4]

Petitioner Begna's case presents no novel or substantial legal issues, and although he asserts that the BIA's summary affirmance violated his due process rights, his brief fails to identify any grounds justifying judicial review of the BIA's summary affirmance. Accordingly, such review is not warranted in this case.

Nonetheless, I concur in order to highlight a perceived error in our jurisdiction's precedent, and to echo the Third Circuit's concern that it is highly "foreseeable that there will be a number of situations . . . in which an arbitrary and capricious decision to streamline will hold the potential for distorting the judicial

_____

[3]Although I joined in the Wolde decision, the Smriko case has since persuaded me that my decision was in error. See Smriko, 2004 U.S. App. LEXIS 22263, passim; see also id. at \*52-53 (concurrence by J. Lay).

[4]Our opinion in Ngure stated that the Fifth Circuit has, like us, "held" that the BIA's application of streamlined procedures is not subject to judicial review as a matter of law. See Ngure, 367 F.3d at 988 n.6 (citing Garcia-Melendez v. Ashcroft, 351 F.3d 657, 662-63 (5th Cir. 2003)). However, Garcia-Melendez contains no such holding. If anything, the wording of Garcia-Melendez seems to actually obscure the difference between a challenge to streamlining procedures based on due process grounds, and a challenge to streamlining procedures based on arbitrariness or an abuse of discretion under the APA. See Garcia-Melendez, 351 F.3d at 662-63. Thus, Judge Stapleton's characterization of Ngure as an outlier was correct.

review that both the regulations and Congress contemplated." <u>Smriko</u>, 2004 U.S. App. LEXIS 22263, *47-48. The precedent in our jurisdiction should be modified in accordance with the majority of circuit courts.

_____