# United States Court of Appeals for the Federal Circuit

---

**ROBERT J. MCCARTHY,**
*Petitioner*

v.

**MERIT SYSTEMS PROTECTION BOARD,**
*Respondent*

---

2015-3072

---

Petition for review of the Merit Systems Protection Board in No. DA-1221-09-0725-W-1, DA-1221-10-0078-W-1.

---

Decided: January 14, 2016

---

PAULA NAOMI DINERSTEIN, Public Employees for Environmental Responsibility, Washington, DC, argued for petitioner.

MICHAEL ANTON CARNEY, Office of the General Counsel, Merit Systems Protection Board, Washington, DC, argued for respondent. Also represented by BRYAN G. POLISUK.

---

Before PROST, *Chief Judge,* LOURIE and WALLACH, *Circuit Judges.*

PROST, *Chief Judge*.

Robert McCarthy, who was formerly employed as a supervisory attorney for the United States International Boundary and Water Commission (the "Commission" or the "USIBWC"), appeals from a denial by the Merit Systems Protection Board ("Board") of his motion to reopen his appeal. For the reasons discussed below, this court affirms.

BACKGROUND

A

The circumstances giving rise to this appeal are summarized in part in our decision *McCarthy v. International Boundary and Water Commission: U.S. and Mexico*, 497 F. App'x 4 (Fed. Cir. 2012) (unpublished). We provide facts relevant to the issues here below.

USIBWC Commissioner Bill Ruth hired McCarthy as a full-time, supervisory attorney for the Commission beginning January 18, 2009. Between June and July, 2009, McCarthy prepared four legal memoranda (two on June 19, one on July 14, and one on July 20) challenging certain activities at the Commission as "gross mismanagement" and contrary to existing law. McCarthy's memoranda also attacked certain officers as lacking "core competencies."

On July 28, 2009, McCarthy submitted a report titled "Disclosures of Alleged Fraud, Waste and Abuse" to the State Department Office of Inspector General ("OIG"), as well as other federal agencies. The report stated, "I have previously made the Commissioner aware of the matters disclosed herein, and I have provided legal advice with respect thereto." J.A. 171. It specifically identified both June 19 memoranda, but did not identify the July memoranda. That same day, McCarthy sent an email to the USIBWC's Commissioner Ruth informing him that he had

"report[ed] allegations of fraud, waste and abuse (and suspected criminal activity)." J.A. 182.

On July 31, 2009, Commissioner Ruth terminated McCarthy's employment. In support of his decision, Commissioner Ruth cited McCarthy's

> continued failure to support me or other members of the executive staff in a constructive and collegial manner as evidenced in [his] memoranda of June 19, 2009, 'Legal Requirements for Information Management', June 19, 2009, 'Legal Requirements for Separation of Budget and Finance Responsibilities', July 14, 2009, 'Opinion on the Draft Internal Audit Program Directive and Manual', and July 20, 2009, 'Comments on Proposed Directive Management System' . . . .

J.A. 183.

## B

On August 1, 2009, McCarthy filed a complaint with the Office of Special Counsel ("OSC"), alleging whistleblower retaliation. His complaint identified his report to OIG, but not the legal memoranda, as protected activity. At the time, this was consistent with existing precedent, which held that reports made in the course of an employee's normal duties and reports made to a supervisor about a supervisor's conduct were not protected under the Whistleblower Protection Act of 1989, Pub. L. No. 101-12, 103 Stat. 16 (codified at various sections of 5 U.S.C.) ("WPA"). *See Huffman v. Office of Pers. Mgmt.*, 263 F.3d 1341, 1344 (Fed. Cir. 2001). On August 21, McCarthy submitted an additional "Statement in Support of Complaint for Reprisal, Appeal and Stay Request" to the OSC which discussed his whistleblowing complaint in more detail. This statement did not explicitly identify the legal memoranda, but discussed similar topics. *Compare* J.A.

209–23 (August 21 statement), *with* J.A. 152–81 (legal memoranda).

The administrative judge issued an initial decision on April 9, 2010, concluding that McCarthy had not been retaliated against. The Board affirmed the administrative judge's initial decision on August 5, 2011, and we affirmed on October 15, 2012. *McCarthy*, 497 F. App'x at 16.

McCarthy petitioned for rehearing on November 29, 2012. Petition for Panel Rehearing, Rehearing En Banc, *McCarthy*, 497 F. App'x 4 (No. 11-3239), ECF No. 2. While McCarthy's petition was still pending, Congress enacted the Whistleblower Protection Enhancement Act of 2012 ("WPEA"), which became effective December 27, 2012. Pub. L. No. 112-199, 126 Stat. 1465-76 (codified as amended in scattered sections of 5 U.S.C., 6 U.S.C. § 133, 31 U.S.C. § 1116, 50 U.S.C. § 401a). Both parties recognize that, under the WPEA, McCarthy's four legal memoranda could be protected disclosures. *Compare* Opening Br. 31–32, *with* Responsive Br. 31; *see* 5 U.S.C. § 2302(f). On June 26, 2013, the Board decided *Day v. Department of Homeland Security*, No. DC-1221-12-0528-W-1, 2013 WL 3204514 (M.S.P.B. June 26, 2013), which held that § 101 of the WPEA could be applied retroactively to pending cases. The parties do not dispute that the WPEA could be applied retroactively here. *Compare* Opening Br. 14, 24–25, *with* Responsive Br. 28. McCarthy did not raise the WPEA's change in law while his petition for rehearing was pending.[1]

---

[1] At oral argument, McCarthy explained that he did not raise WPEA's change in law while his petition was pending because the Board had not yet decided *Day*. Thus, in his view, it was unclear that the WPEA could be retroactively applied to his case.

We denied McCarthy's petition for rehearing on February 13, 2013. *McCarthy v. Int'l Boundary & Water Comm'n: U.S. & Mex.*, No. 11-3239 (Fed. Cir. Feb. 13, 2013). McCarthy petitioned for certiorari to the Supreme Court on May 13, 2013, which was denied on October 7, 2013. *McCarthy v. Int'l Boundary & Water Comm'n: U.S. & Mex.*, No. 12-1364 (Oct. 7, 2013).

On October 25, 2013, McCarthy filed a motion to reopen his appeal with the Board, seeking reinstatement and "other appropriate relief." J.A. 132. After the Board did not respond, on December 1, 2014, McCarthy petitioned this court for a writ of mandamus directing the Board to issue a decision. Petition for Writ of Mandamus, *In re McCarthy*, No. 2015-118 (Fed. Cir. Dec. 1, 2014), ECF No. 1. While McCarthy's mandamus petition was pending, on January 8, 2015, the Clerk of the Board sent McCarthy a letter informing him that the Board would not reopen his case. We denied McCarthy's mandamus petition on January 29, 2015, electing to instead construe his petition as a timely petition for review, which is the appeal now before us.

## DISCUSSION

### A

This court's review of decisions by the Board is limited. Under 28 U.S.C. § 1295(a)(9), we may only hear "an appeal from a final order or final decision of the" Board. 28 U.S.C. § 1295(a)(9) (2012). A threshold question, then, is whether the Clerk's January 8 letter constitutes a "final order or final decision" that may be reviewed by us.

Section 1201.113 of 5 C.F.R., titled "Finality of decision," provides in relevant part:

> The initial decision of the judge will become the Board's final decision 35 days after issuance. Initial decisions are not precedential.

(a) Exceptions.  The initial decision will not become the Board's final decision if within the time limit for filing specified in 1201.114 of this part, any party files a petition for review or, if no petition for review is filed, files a request that the initial decision be vacated for the purpose of accepting a settlement agreement into the record.

(b) Petition for review denied.  If the Board denies all petitions for review, the initial decision will become final when the Board issues its last decision denying a petition for review.

(c) Petition for review granted or case reopened.  If the Board grants a petition for review or a cross petition for review, or reopens or dismisses a case, the decision of the Board is final if it disposes of the entire action.

The reviewability of Clerk letters from the Board is not an entirely new question to us.  In *Haines v. Merit Systems Protection Board*, 44 F.3d 998, 1000 (Fed. Cir. 1995), we found that a pro forma letter from the Clerk denying repetitive motions to reopen was not a "final order or final decision" under 5 C.F.R. § 1201.113, and thus not reviewable.  We reasoned that "the letter was merely an administrative response by the Clerk to Haines's third informal letter request that the Board reopen her appeal and reconsider its final decision on its own motion.  The Clerk had been delegated the authority to make such responses by the Board and was performing only a ministerial function in this regard." *Id.*

While we need not decide the reviewability of Clerk letters generally, we conclude that, at least in the circumstances of this case, where a Clerk letter denies a first motion to reopen, *Haines* does not apply.  As previously noted, *Haines* appears to have involved repetitive motions to reopen. *In re McCarthy*, No. 15-118, slip op. at 2 (Fed. Cir. Jan. 29, 2015).  Because of this, the situation

only required an "administrative response" which could be dispensed by a "ministerial function." *Haines*, 44 F.3d at 1000. By contrast, McCarthy's motion to reopen had not been previously considered by the Board as it involved an intervening change in law. In effect, then, the Clerk letter announcing the Board's denial of his motion announced a substantive decision which had a real impact on McCarthy's interests. The nature of this decision is akin to a "final order or final decision," not an "administrative response," and should be construed as such. This court's jurisdiction should not turn on the manner in which the Board chooses to announce its decision, and it would elevate form over substance to hold otherwise.

The Board's arguments to the contrary are unavailing. While it is true that existing statutes and regulations do not specifically state that a Clerk letter is a "final order or final decision," *see, e.g.*, 5 U.S.C. § 7701(e)(1)(B), 5 C.F.R. §§ 1201.113, 1201.117(c), they also do not prohibit it from being so. Indeed, they are silent as to the form these documents may or may not take. *Id.* Thus, characterizing a Clerk letter as a "final order or decision" does not conflict with existing law.

Accordingly, we are not deprived of jurisdiction simply because the Board issued its denial of McCarthy's motion to reopen in letter form.

## B

This case presents a second jurisdictional hurdle: even if the Clerk letter in this case qualifies as a "final order or decision," we may not hear this case if the Board's decision on McCarthy's motion to reopen a case is not itself reviewable. In past cases, we have acknowledged that is an open question. *See, e.g.*, *Zamot v. Merit Sys. Prot. Bd.*, 332 F.3d 1374, 1378 (Fed. Cir. 2003) (noting that whether we have the authority to review a Board decision regarding reopening is "an issue the court has left open"); *Nelson v. FDIC*, 83 F.3d 1375, 1377 (Fed. Cir. 1996) ("Assuming,

without deciding, that we may review the Board's decision not to reopen an appeal on its own motion . . . for an abuse of discretion, we discern no such abuse . . . .").

"Congress rarely intends to prevent courts from enforcing its directives to federal agencies" and there exists a "strong presumption favoring judicial review of administrative action." *Mach Mining, LLC v. EEOC*, 135 S. Ct. 1645, 1651 (2015). Nevertheless, before review may be had, "a party must first clear the hurdle of § 701(a)." *Heckler v. Chaney*, 470 U.S. 821, 828 (1985). Section 701(a)(2) of the Administrative Procedures Act ("APA") precludes judicial review where "agency action is committed to agency discretion by law." 5 U.S.C. § 701(a)(2). This is a "very narrow exception" that applies in "those rare instances where 'statutes are drawn in such broad terms that in a given case there is no law to apply.'" *Citizens to Preserve Overton Park, Inc.*, 401 U.S. 402, 410 (1971) (quoting S. Rep. No. 79-752, at 26 (1945)); *see also Heckler*, 470 U.S. at 830 ("[R]eview is not to be had if the statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion."). In addition, § 701(a)(2) more likely applies if an "agency decision not to enforce often involves a complicated balancing of a number of factors which are peculiarly within its expertise." *Heckler*, 470 U.S. at 831.

The only statutory acknowledgement of the Board's authority to reopen cases appears in 5 U.S.C. § 7701(e)(1), which provides:

(e)(1) Except as provided in section 7702 of this title, any decision under subsection (b) of this section shall be final unless—

(A) a party to the appeal or the Director petitions the Board for review within 30 days after the receipt of the decision; or

(B) the Board reopens and reconsiders a case on its own motion.

The Board, for good cause shown, may extend the 30-day period referred to in subparagraph (A) of this paragraph. One member of the Board may grant a petition or otherwise direct that a decision be reviewed by the full Board. The preceding sentence shall not apply if, by law, a decision of an administrative law judge is required to be acted upon by the Board.

The Board argues that the "broad and standard-less language" of § 7701(e)(1)(B) is sufficient to bring cases such as this, where the Board denies a motion to reopen, within the prohibition of § 701(a)(2). Specifically, the Board notes that this statute neither authorizes motions to reopen, nor does it lay out a standard by which such motions should be judged. It contrasts this to statutes governing motions to reopen in other contexts, such as 49 U.S.C. § 10327(g),[2] which sets forth the Interstate Com-

---

[2] Section 10327(g) of 49 U.S.C. provides:

(g)(1) The Commission may, at any time on its own initiative because of material error, new evidence, or substantially changed circumstances—

(A) reopen a proceeding;

(B) grant rehearing, reargument, or reconsideration of an action of the Commission; and

(C) change an action of the Commission.

An interested party may petition to reopen and reconsider an action of the Commission under this paragraph under regulations of the Commission.

(2) The Commission may grant a rehearing, reargument, or reconsideration of an action of the

merce Commission's authority to reopen prior decisions and which the Supreme Court has found reviewable in certain circumstances. *Interstate Commerce Comm'n v. Bhd. of Locomotive Eng'rs*, 482 U.S. 270, 284 (1987).

The Board's reliance on § 7701(e)(1)(B) is misplaced. Section 7701(e), the broader provision in which § 7701(e)(1)(B) appears, is a provision which sets forth conditions under which a decision of the Board can be considered final. Its reference to "the Board reopens" is simply that—a reference to reopening such that it can set forth how reopening impacts a decision's status (e.g., final or not final). Unlike 49 U.S.C. § 10327(g) (the Interstate Commerce Commission provision cited by the Board), this is not a provision focused on reopening procedures, nor the Board's authority to act in this way. Therefore, it makes sense that § 7701(e)(1)(B) would not fully set forth legal standards or address motion practice—this was not the purpose of this provision and an attempt to do so

---

Commission that was taken by a division designated by the Commission if it finds that—

(A) the action involves a matter of general transportation importance; or

(B) the action would be affected materially because of clear and convincing new evidence or changed circumstances.

An interested party may petition for rehearing, reargument, or reconsideration of an action of the Commission under this paragraph under regulations of the Commission. The Commission may stay an action pending a final determination under this paragraph. The Commission shall complete reconsideration and take final action by the 120th day after the petition is granted.

could render the remainder of the provision confusing. Given this context, it would not be reasonable to infer an intent to "commit to agency discretion by law" from § 7701(e)(1)(B)'s passing reference to "the Board reopens." *See Barlow v. Collins*, 397 U.S. 159, 166–67 (1970) ("[J]udicial review of a final agency action by an aggrieved person will not be cut of [sic] unless there is persuasive reason to believe that such was the purpose of Congress."); *Abbott Labs. v. Gardner*, 387 U.S. 136, 141 (1967), *abrogated by Califano v. Sanders*, 430 U.S. 99 (1977) ("[O]nly upon a showing of 'clear and convincing evidence' of a contrary legislative intent should the courts restrict access to judicial review."). We decline to do so here.

We also do not think that the fact that Congress has otherwise been silent as to the Board's authority to reopen a case is sufficient to pull this case within the realm of § 701(a)(2). The mere absence of a statute spelling out the details of how an agency should carry out a particular action does not mean that that action has been wholly committed to agency discretion. Indeed, the Supreme Court has found agency decisions—including decisions to not reopen a case—reviewable under the APA, even in the absence of specific statutory directives. *See, e.g.*, *Dunlop v. Bachowski*, 421 U.S. 560, 573 (1975), *overruled on other grounds by Local No. 82, Furniture & Piano Moving, Furniture Store Drivers, Helpers, Warehousemen & Packers v. Crowley*, 467 U.S. 526, 549–50 (1984) (Secretary of Labor's decision to file certain civil actions was judicially reviewable in absence of statutory prohibition); *Data Processing Serv. Orgs., Inc. v. Camp*, 397 U.S. 150, 158 (1970) (ruling by Comptroller was judicially reviewable in absence of statutory indication that review was precluded); *see also INS v. Rios-Pineda*, 471 U.S. 444, 451 (1985) (refusal to reopen suspension proceeding reviewable despite absence of statutory mechanism for reopening).

What remains, then, is the "strong presumption favoring judicial review of administrative action." *Mach Mining, LLC*, 135 S. Ct. at 1651. In the specific facts before us here, where the Board issued a decision on a motion to reopen that is premised on a change in law, we find that review is appropriate under 5 U.S.C. § 706(2)(A). The Supreme Court has held:

> Though the agency's discretion is unfettered at the outset, if it announces and follows—by rule or by settled course of adjudication—a general policy by which its exercise of discretion will be governed, an irrational departure from that policy (as opposed to an avowed alteration of it) could constitute action that must be overturned as 'arbitrary, capricious, [or] an abuse of discretion' within the meaning of the Administrative Procedure Act, 5 U.S.C. § 706(2)(A).

*INS v. Yueh-Shaio Yang*, 519 U.S. 26, 32 (1996). This is precisely the case here: the Board has established a practice of entertaining motions to reopen which, although not codified in statute, are governed by regulations and substantially settled case law. *See, e.g.*, 5 C.F.R. §§ 1201.117, 1201.118; *Anthony v. Office of Pers. Mgmt.*, 70 M.S.P.R. 214, 219 (1996); *Moss v. Dep't of the Air Force*, No. CH-1221-97-0313-B-1, 1999 WL 398739 (M.S.P.B. June 11, 1999), *aff'd sub nom. Moss v. Dep't of the Air Force*, 230 F.3d 1372 (Fed. Cir. 1999). Most notably, the Board has held that reopening "may be appropriate where there is clear and material legal error, and a conflict between the holding of the decision and a controlling precedent or statute, either because of an oversight or a change in the controlling law between the date of the original decision and the reopening request." *Olson v. Dep't of Agric.*, No. CH-3443-00-0857-I-1, 2002 WL 1289867 (M.S.P.B. June 3, 2002).

Accordingly, we hold that, at least in the case of a Board decision on a motion to reopen that is premised on a change in law, we have jurisdiction to review, generally applying the "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" standard under 5 U.S.C. § 706(2)(A). Whether we have jurisdiction to review decisions on motions to reopen that are premised on other grounds, or the Board's decision to reopen a case sua sponte, are issues we need not reach, and we decline to do so here.

C

Having found the Board's denial of McCarthy's motion to reopen reviewable under the APA, we next consider whether the Board erred in denying McCarthy's motion. We conclude that it did not.

As an initial matter, we note that the Board did not specify in its January 8 letter the bases under which it denied McCarthy's motion to reopen. This potentially raises concerns under *Chenery*, which generally prohibits courts from upholding agency decisions on grounds other than those actually relied upon by the agency. *See SEC v. Chenery Corp.*, 318 U.S. 80, 95 (1943) ("[A]n administrative order cannot be upheld unless the grounds upon which the agency acted in exercising its powers were those upon which its action can be sustained.") However, even under *Chenery* we may, in appropriate circumstances, "affirm the agency on grounds other than those relied upon in rendering its decision, when upholding the agency's decision does not depend upon making a determination of fact not previously made by the agency." *In re Comiskey*, 554 F.3d 967, 974 (Fed. Cir. 2009) (quoting *Killip v. Office of Pers. Mgmt.*, 991 F.2d 1564, 1568–69 (Fed. Cir. 1993)) (internal quotation marks omitted); *see also Fleshman v. West*, 138 F.3d 1429, 1433 (Fed. Cir. 1998) (quoting *Koyo Seiko Co. v. United States*, 95 F.3d 1094, 1099–1102 (Fed. Cir. 1996)) ("[T]he [*Chenery*]

doctrine does not prohibit a reviewing court from affirming an agency decision on a ground different from the one used by the agency if the new ground is not one that calls for 'a determination or judgment which an administrative agency alone is authorized to make.'"). Because, as we explain below, we can affirm the Board's decision on precisely such grounds—a lack of jurisdiction based on application of a statute (5 U.S.C. § 1214) to undisputed facts (McCarthy did not identify the legal memoranda in his submissions to the OSC)—there is no *Chenery* concern here.

The Board's jurisdiction is not plenary, but is limited by statute. 5 U.S.C. § 7701(a). A petitioner bears the burden of establishing that the Board has jurisdiction by a preponderance of evidence. *Serrao v. Merit Sys. Prot. Bd.*, 95 F.3d 1569, 1573 (Fed. Cir. 1996) (citing 5 C.F.R. § 1201.56(a)(2)).

McCarthy's case is an individual right of action ("IRA") appeal, which the Board has jurisdiction to hear under 5 U.S.C. § 1214. However, before an aggrieved employee can file an IRA appeal, he must first seek corrective action from the OSC. 5 U.S.C. § 1214(a)(3) ("Except in a case in which an employee, former employee, or applicant for employment has the right to appeal directly to the Merit Systems Protection Board under any law, rule, or regulation, any such employee, former employee, or applicant shall seek corrective action from the Special Counsel before seeking corrective action from the Board.").

In assessing whether an employee has exhausted his OSC remedies, we look to his OSC complaint, as well as written correspondence concerning his allegations. *Serrao*, 95 F.3d at 1577; *Benton-Flores v. Dep't of Def.*, No. DC-1221-13-0522-W-1, 2014 WL 3748419 (M.S.P.B. July 31, 2014). "We require that the employee 'articulate with reasonable clarity and precision [before the OSC] the

basis for his request for corrective action under the WPA'
to allow OSC to effectively pursue an investigation."
*Miller v. Merit Sys. Prot. Bd.*, No. 2015-3054, 2015 WL
4681015, at *6 (Fed. Cir. Aug. 6, 2015) (quoting *Serrao*, 95
F.3d at 1577); *see also Knollenberg v. Merit Sys. Prot. Bd.*,
953 F.2d 623, 626 (Fed. Cir. 1992) (requiring a "sufficient
basis to pursue an investigation which might have led to
corrective action"). "The Board's jurisdiction over an IRA
appeal, assuming the employee does not have an inde-
pendent right to appeal directly to the Board, is thus
limited to those issues that have been previously raised
with OSC." *Miller*, 2015 WL 4681015, at *6.

Applying these principles here, we find that McCarthy
has not sufficiently exhausted his OSC remedies with
respect to the legal memoranda. McCarthy's OSC com-
plaint only identifies his July 28 report to the OIG and a
July 29 disclosure to Congressman Reyes. It makes no
mention of his legal memoranda. Given this, the OSC's
"basis to pursue an investigation" was only these two
disclosures and the circumstances surrounding them,
such as whom these disclosures were made to, the Com-
mission's awareness of these disclosures, and how they
related to the events that led to McCarthy's termination.
This did not provide the OSC with a "sufficient basis to
pursue an investigation" with respect to McCarthy's legal
memoranda—these were different disclosures, made to
different people, at different times.

Moreover, the case that McCarthy presented to the
OSC in 2009 substantially differs from the case he pre-
sents now. In 2009, McCarthy's legal memoranda were
not considered protected disclosures under the WPA;
thus, the OSC would have had no basis to investigate the
legal memoranda and develop findings related to these
disclosures. What McCarthy presents now is in essence a
different case, and the OSC has not had an opportunity to
"effectively pursue an investigation" with respect to these

circumstances. Thus, McCarthy has failed to satisfy § 1214(a)(3)'s exhaustion requirement.

McCarthy nonetheless argues that he has exhausted his OSC remedies because his August 21 statement discussed the substance of his legal memoranda. J.A. 206–27. We disagree. As discussed, this submission was provided and subsequently evaluated against the backdrop of the WPA: the legal memoranda were not protected disclosures and the OSC would have had no basis to "effectively pursue an investigation" with respect to them.

Next, McCarthy argues that "the Board and this court have already considered the import of the legal memoranda." Reply Br. 15. It is not clear to us that McCarthy's selective excerpts show that the Board or this court has done so. Regardless, the consideration that the Board or this court would give to the legal memoranda on appellate review is not necessarily the same consideration that the OSC would give in the first instance, and cannot be substituted for it.

McCarthy also argues that the exhaustion requirement only applies to the content of whistleblowing disclosures, and that existing case law does not require that he correctly affix legal labels to these facts. We agree that the focus of the exhaustion requirement is on substance; however, McCarthy has not satisfied this requirement here. Neither his OSC complaint nor his August 21 statement identifies the legal memoranda with sufficient specificity or context to allow the OSC to effectively investigate his claims. Unlike *Briley v. National Archives & Records Administration*, 236 F.3d 1373, 1378 (Fed. Cir. 2001), cited by McCarthy, this is not simply a case where McCarthy is presenting a "more detailed account of [his] whistleblowing activities" to the Board than he did to the OSC, but otherwise made submissions to the OSC that "contain[ed] the core of [his] retaliation claim" and "gave the OSC sufficient basis to pursue an investigation."

Instead, the core substance of McCarthy's complaint has shifted from a single disclosure to the OIG (which, at best, was at least in part cumulative of a nebulous collection of previous disclosures) to four distinct legal memoranda provided to specific individuals at specific times.

We find, then, that McCarthy has not exhausted his OSC remedies with respect to the legal memoranda. This rendered the Board without jurisdiction to hear his case under 5 U.S.C. § 1214.

The Board did not err in dismissing McCarthy's appeal and we affirm the Board's decision. We note that McCarthy remains free to pursue a complaint with the OSC with respect to his four legal memoranda, as there is no statutory time limit for filing a request for corrective action with the OSC. *Augustine v. Dep't of Justice*, 50 M.S.P.R. 648, 652 (1991).

### AFFIRMED

#### COSTS

Each party shall bear their own costs.