**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

KEVIN J. BARRETT,
           Appellant,

      v.

DEPARTMENT OF VETERANS
    AFFAIRS,
           Agency.

DOCKET NUMBER
SF-1221-16-0632-W-1

DATE: April 27, 2023

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

Timothy A. Bridge, Esquire, St. Charles, Illinois, for the appellant.

Glen E. Woodworth, Esquire, Anchorage, Alaska, for the agency.

**BEFORE**

Cathy A. Harris, Vice Chairman
Raymond A. Limon, Member

**FINAL ORDER**

¶1      The appellant has filed a petition for review of the initial decision, which dismissed for lack of jurisdiction his request for corrective action in an individual right of action (IRA) appeal. Generally, we grant petitions such as this one only in the following circumstances: the initial decision contains erroneous findings

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

of material fact; the initial decision is based on an erroneous interpretation of statute or regulation or the erroneous application of the law to the facts of the case; the administrative judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115). After fully considering the filings in this appeal, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review. Therefore, we DENY the petition for review and AFFIRM the initial decision, which is now the Board's final decision. 5 C.F.R. § 1201.113(b).

## BACKGROUND

¶2    The appellant has served as a Nurse Practitioner at the agency's Alaska Healthcare System since September 2014. Initial Appeal File (IAF), Tab 6 at 304-05. On December 30, 2015, the appellant filed a complaint with the Office of Special Counsel (OSC) in which he alleged that the agency had retaliated against him for whistleblowing. IAF, Tab 1 at 10-30. In his complaint, the appellant alleged that he had made two disclosures: (1) on September 4, 2015, he had disclosed to his first-level supervisor "the denial of OT/CT in order to complete excessive labor," and (2) on May 21, 2015, he disclosed to his first-level supervisor that he had "been receiving threats for adding OT/CT to complete the work given."[2] *Id.* at 21-22. The appellant also alleged that the agency had improperly extended the length of his service obligation under a relocation incentive agreement, and that his first-level supervisor had "created a continuous toxic and hostile work environment" in which she treated him

---

[2] "OT/CT" appears to refer to overtime and compensatory time off. IAF, Tab 1 at 26, 44.

differently based on race, color, and age; denied his requests for overtime; double-booked his appointments; and took other actions against him in reprisal for his requests for overtime and filing of an equal employment opportunity (EEO) complaint.[3]  *Id.* at 25-30.  On May 20 and 22, 2016, the appellant forwarded emails and other documents to the OSC Complaints Examining Unit (CEU).  IAF, Tab 5 at 15-127.

¶3        By letter dated June 8, 2016, the CEU notified the appellant that it had made a preliminary determination to close its inquiry into his complaint and provided him with an opportunity to respond within 13 days of the date of the letter.[4]  *Id.* at 13-15.  On June 28, 2016, the CEU notified the appellant that, having received no comments to its June 8, 2016 letter, it was closing its file.  IAF, Tab 1 at 9.  On July 7, 2016, the appellant's representative sent OSC a letter alleging that the appellant was subjected to five additional prohibited personnel practices and requesting that they be included in the investigation or supplemental

---

[3] In his OSC complaint, the appellant stated that he filed a complaint with the agency's Inspector General (IG) and OSC characterized the appellant's IG complaint as a protected activity in its close out letter.  IAF, Tab 1 at 15, Tab 5 at 13.  However, the record does not contain a copy of the appellant's complaint to the IG or any other information about the IG complaint.  Further, the appellant, who was represented by an attorney at all stages of this process, has never alleged in front of the Board that his IG complaint was a protected activity under 5 U.S.C. § 2302(b)(9), despite having several opportunities to comprehensively frame his claims, and having been placed on notice that such activity would qualify as a protected activity under 5 U.S.C. § 2302(b)(9). IAF, Tab 1, Tab 3 at 3, Tab 5 at 1-7.  The administrative judge did not address the IG complaint in the initial decision, and the appellant has not raised the matter in his petition for review.  IAF, Tab 7, Initial Decision (ID); Petition for Review (PFR) File, Tab 1 at 1-11.  It is the parties' prerogative to craft their case as they see fit; as the appellant has not claimed that his IG complaint was a protected activity in front of the Board, we need not address it.

[4] The administrative judge noted that it was unclear whether the OSC's CEU considered the appellant's December 30, 2015 complaint or another complaint.  ID at 2 n.1.  The appellant has not asserted that he filed another complaint alleging reprisal with OSC and the file number referenced in OSC's June 8, 2016 letter matches the file number assigned to the December 30, 2015 complaint.  IAF, Tab 1 at 10, Tab 5 at 13.  Accordingly, we find that the December 30, 2015 complaint is the only OSC complaint at issue in this appeal.

investigation. IAF, Tab 5 at 132-33. The record does not contain a response from OSC to this letter.

¶4      On July 15, 2016, the appellant filed an IRA appeal alleging that he was subjected to nine actions that constituted prohibited personnel practices. IAF, Tab 1 at 1-8. The administrative judge issued an order notifying the appellant of the elements and burdens of proof to establish Board jurisdiction over his IRA appeal and ordering him to file evidence and argument demonstrating jurisdiction. IAF, Tab 3 at 2-8. The appellant filed a response to the order in which he alleged that he was subjected to prohibited personnel practices after he disclosed deficiencies in the care and treatment of patients. IAF, Tab 5 at 1-6, 134-35. His response described eight communications to agency officials that he alleged took place: (1) during a May 25, 2015 meeting; (2) in a June 11, 2015 email; (3) during a July 15, 2015 meeting; (4) in a July 15, 2015 email; (5) during a July 16, 2015 meeting; (6) in a September 17, 2015 email; (7) during a November 5, 2015 meeting; and (8) in a set of emails spanning November 5 and 6, 2015. *Id.* at 134-35.[5] The appellant alleged that the first seven communications "concern the increasing number of patient alerts caused by the staffing shortages in the Department and [his first-level supervisor's] failure to authorize sufficient CT/OT to resolve the backlog of patient alerts," which he made because he believed his first-level supervisor's "patient assignment practices presented a real and substantial danger to the health and safety of the veterans/patients." *Id.* The eighth communication was comprised of communications made by other agency staff. *Id.* at 135. The agency filed a response, arguing that the appellant had not made nonfrivolous allegations that he

---

[5] The appellant did not explicitly allege in his appeal that he made disclosures on May 21 or September 4, 2015, as he did in his OSC complaint. *Compare* IAF, Tab 1 at 1-8, Tab 5 at 1-7 *with* IAF, Tab 1 at 10-30. Accordingly, we do not further discuss the May 21 or September 4, 2015 disclosures herein.

made protected disclosures and those disclosures were a contributing factor in any alleged personnel actions. IAF, Tab 6 at 7-10.

¶5 The administrative judge issued an initial decision dismissing the appeal for lack of jurisdiction based on the written record. IAF, Tab 7, Initial Decision (ID). The administrative judge first found that, of the eight communications the appellant alleged were protected, he had nonfrivolously alleged that the four communications he purportedly made to agency officials during meetings on May 25, July 15-16, and November 5, 2015, were protected disclosures. ID at 5-6.

¶6 She found that, as to the four remaining communications, the appellant did not nonfrivolously allege that he reasonably believed the communication evidenced a violation of a law, rule, or regulation, gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety. ID at 6-8. Rather, the administrative judge found that three of the communications, emails the appellant sent to agency officials on June 11, July 15, and September 17, 2015, merely reflected his requests for overtime and a reduced caseload, and summarized a conversation with his supervisors about his performance. *Id.* Further, the administrative judge found that the appellant failed to nonfrivolously allege that the November 5 and 6, 2015 emails sent by other staff members were protected because he did not make the disclosures. ID at 8. Thus, the administrative judge found that the four disclosures were not protected.

¶7 The administrative judge then found that the appellant did not prove exhaustion of his administrative remedies before OSC concerning the four disclosures that he had nonfrivolously alleged were protected. ID at 8-12. She found that the appellant's complaint and correspondence to OSC did not reflect that he notified OSC of his July 16, 2015 or November 5, 2015 communications. ID at 9. She also found that the appellant mentioned his May 25 and July 15, 2015 meetings to OSC but did not provide OSC with a

sufficient basis to pursue an investigation that might lead to corrective action, as he failed to provide OSC with any information that might render either communication a protected disclosure.  ID at 9-12.  The administrative judge thus dismissed the appeal for lack of jurisdiction.  ID at 12.

¶8    The appellant has filed a petition for review in which he argues that the administrative judge erred in finding that certain disclosures regarding patient safety were not protected and asserts that he provided OSC with a sufficient basis on which to conduct an investigation that might lead to corrective action.  Petition for Review (PFR) File, Tab 1 at 2-11.  The agency has responded in opposition to the petition.  PFR File, Tab 3.

### DISCUSSION OF ARGUMENTS ON REVIEW

¶9    To establish Board jurisdiction over an IRA appeal brought pursuant to the Whistleblower Protection Enhancement Act of 2012 (WPEA), the appellant must exhaust his administrative remedies before OSC and make nonfrivolous allegations that:  (1) he made a protected disclosure described under 5 U.S.C. § 2302(b)(8) or engaged in protected activity as specified in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D); and (2) the protected disclosure or activity was a contributing factor in the agency's decision to take or fail to take a personnel action as defined by 5 U.S.C. § 2302(a).  5 U.S.C. §§ 1214(a)(3), 1221; *Salerno v. Department of the Interior*, 123 M.S.P.R. 230, ¶ 5 (2016); *see Yunus v. Department of Veterans Affairs*, 242 F.3d 1367, 1371 (Fed. Cir. 2001).[6] Jurisdiction in an IRA appeal is determined based on the written record.  *See Graves v. Department of Veterans Affairs*, 123 M.S.P.R. 434, ¶ 22 (2016)

---

[6] Historically, the Board has been bound by the precedent of the U.S. Court of Appeals for the Federal Circuit on these types of whistleblower issues.  However, pursuant to the All Circuit Review Act, Pub. L. No. 115-195, 132 Stat. 1510, appellants may file petitions for judicial review of Board decisions in whistleblower reprisal cases with any circuit court of appeals of competent jurisdiction.  *See* 5 U.S.C. § 7703(b)(1)(B). Therefore, we must consider these issues with the view that the appellant may seek review of this decision before any appropriate court of appeal.

(holding that an employee is not entitled to a jurisdictional hearing in an IRA appeal) (citing *Spencer v. Department of the Navy*, 327 F.3d 1354, 1356 (Fed. Cir. 2003)).

¶10        The Board's jurisdictional inquiry generally begins by examining whether the appellant has shown that he exhausted his administrative remedies before OSC, as the Board's jurisdiction over an IRA appeal is limited to those issues raised before OSC. *See Ellison v. Merit Systems Protection Board*, 7 F.3d 1031, 1037 (Fed. Cir. 1993) (holding that the Board correctly declined to consider allegations of disclosures not clearly raised before OSC)[7]; *Miller v. Federal Deposit Insurance Corporation*, 122 M.S.P.R. 3, ¶ 6 (2014) ("The first element of Board jurisdiction over an IRA appeal is exhaustion by the appellant of his administrative remedies before OSC"), *aff'd*, 626 F. App'x 261 (Fed. Cir. 2015). The administrative judge in this case first addressed whether the appellant made a nonfrivolous allegation that the eight communications at issue were protected disclosures and subsequently addressed exhaustion regarding the four disclosures that she found the appellant had nonfrivolously alleged were protected. ID at 4-12. The administrative judge nevertheless correctly found that the appellant failed to make a nonfrivolous allegation that he made protected disclosures in the June 11, July 15, September 17, and November 5 and 6, 2015 email communications, and that he failed to exhaust his administrative remedies concerning the disclosures he allegedly made during meetings with agency officials on May 25, July 15-16, and November 5, 2015, warranting dismissal of the entire appeal for lack of jurisdiction. *Id.* Accordingly, we first address the appellant's arguments regarding his alleged protected disclosures and then turn to

---

[7] The WPEA, which became effective on December 27, 2012, does not affect the relevant holding in the cited authority, nor does it affect the relevant holdings in the other authorities cited herein that were issued prior to the effective date of the WPEA. *See* Pub. L. No. 112-199, 126 Stat. 1465 (2012). We have reviewed the relevant legislation enacted during the pendency of this appeal and have concluded that it does not affect the outcome of the appeal.

his arguments regarding exhaustion before OSC, concluding that the appellant has not shown error in the administrative judge's initial decision dismissing his appeal for lack of jurisdiction.

<u>The administrative judge correctly found that the appellant did not make a nonfrivolous allegation that he made protected disclosures in the June 11, July 15, September 17, and November 5 and 6, 2015 email communications.</u>

¶11      On review, the appellant argues that the administrative judge erred in finding that he did not nonfrivolously allege that four email communications regarding patient alerts evidenced a substantial and specific danger to public health or safety.  PFR File, Tab 1 at 2-9.  He contends that his concerns about unanswered patient alerts constituted imminent safety concerns "given that treatment delays, mis-diagnosis and medical complications which [sic] could reasonably be expected to occur within a matter of hours or even minutes." *Id.* at 4.

¶12      A nonfrivolous allegation of a protected disclosure is an allegation of facts that, if proven, would show that the appellant disclosed a matter that a reasonable person in his position would believe evidenced one of the categories of wrongdoing specified in 5 U.S.C. § 2302(b)(8)(A).  *Salerno*, 123 M.S.P.R. 230, ¶ 6.  The test to determine whether a putative whistleblower has a reasonable belief that his disclosures evidenced wrongdoing is an objective one:  whether a disinterested observer with knowledge of the essential facts known to and readily ascertainable by the employee could reasonably conclude that the actions of the Government evidenced a violation of law, rule, or regulation, gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety.  *Id.* (citing *Lachance v. White*, 174 F.3d 1378, 1381 (Fed. Cir. 1999)).  Allegations must be detailed and facially well-supported; vague, conclusory, or facially insufficient allegations of Government wrongdoing do not confer jurisdiction.  *Johnston v. Merit Systems Protection Board*, 518 F.3d 905, 910 (Fed. Cir. 2008).

¶13     In determining whether a disclosure evidenced a substantial and specific danger to public health or safety, it is relevant for the Board to consider factors such as:  (1) the likelihood of harm resulting from the danger; (2) the imminence of the potential harm; and (3) the nature of the potential harm.  *Parikh v. Department of Veterans Affairs*, 116 M.S.P.R. 197, ¶ 14 (2011) (citing *Chambers v. Department of the Interior*, 515 F.3d 1362, 1369 (Fed. Cir. 2008)).

¶14     We conclude that the administrative judge properly found that the appellant did not make a nonfrivolous allegation that he disclosed a matter that a reasonable person in his position would believe evidenced a substantial and specific danger to public health or safety in his June 11, July 15, and September 17, 2015 emails to his supervisors.  ID at 6-8.  Although the appellant now contends that these communications conveyed imminent patient safety concerns, the emails do not detail facts giving rise to a reasonable expectation of harm to patients that would likely result in the reasonably foreseeable future.  The appellant's June 11, 2015 email to his first-level supervisor and the facility Chief Nursing Officer states that he stayed to catch up on his alerts because "I could not stand looking at them building up," and does not communicate anything more than the appellant's personal desire to reduce his alerts and receive overtime hours and pay for staying late to do so.  IAF, Tab 5 at 30.  Similarly, the appellant's July 15, 2015 email to his supervisors, which was sent in response to his first-level supervisor's email memorializing two meetings she conducted regarding his performance, also does not reference harm to patients.[8]  *Id.* at 31-32; IAF, Tab 6 at 246.  The only reference the appellant makes to patient care is in response to his supervisor's

---

[8] As noted by the Federal Circuit, in determining whether an appellant has made a nonfrivolous allegation in an IRA appeal, the Board should not consider the appellant's allegations in a vacuum.  *Hessami v. Merit Systems Protection Board*, 979 F.3d 1362, 1369 n.5 (Fed. Cir. 2020).  The Board may consider other matters incorporated by reference, matters integral to the appellant's claim, and matters of public record.  *Id.* Accordingly, here we cite to the first-level supervisor's email to provide context regarding the events that precipitated the appellant's July 15, 2015 email.  IAF, Tab 5 at 31, 32, Tab 6 at 246.

request to contact her should he think of other ways she can help him "be more efficient and manage [his] time, in order to ensure safe patient care within the constraints of a normal work week"; his response opines that, "'to ensure' safe care within a 40 hour work week [he] will try [his] best to come up with a great idea because that would make [him] invaluable to any VA clinic." IAF, Tab 5 at 32, Tab 6 at 246. His communication does not indicate any wrongdoing on the part of the agency or that the agency's current practices evidence a specific danger to patient safety. IAF, Tab 5 at 32. Finally, the appellant's September 17, 2015 email to his supervisor communicates that he "is being double booked without discussion," has "had some patients with serious M[ental] H[ealth] issues," and that his "alerts are building up and [he] cannot keep up with them," but does not connect these statements to a concern about patient health or safety; instead, he requests a reduction in his workload. *Id.* at 46. Each email lacks any indication that harm might come to patients because of the appellant's unprocessed alerts; accordingly, we cannot conclude that he has nonfrivolously alleged that a disinterested observer could have reasonably concluded that the matters he disclosed in each email evidenced a substantial and specific danger to public health or safety.[9]

---

[9] The appellant also argues that it was contradictory for the administrative judge to find certain communications regarding patient alerts were protected, but not others; for example, he cited the administrative judge's findings that the appellant nonfrivolously alleged that his communication in a July 15, 2015 meeting with his supervisor and the Chief Nursing Officer was a protected disclosure, but his July 15, 2015 email regarding the meeting was not. ID at 5, 7; PFR File, Tab 1 at 4-5. The appellant's description of the July 15, 2015 meeting is distinguishable from his email communication from the same date. The plain language of the email did not establish a connection between the appellant's unprocessed alerts and patient safety, whereas the appellant's description of his communication, during the meeting, to his supervisors that certain practices resulted in danger to or "an obstacle to competent professional care" for patients, conveyed that he had allegedly disclosed that agency practices could harm patients. *Compare* IAF, Tab 5 at 31-32, *with* IAF, Tab 5 at 134-35. Thus, the administrative judge properly concluded that the appellant nonfrivolously alleged that certain disclosures, namely, the appellant's description of communications during meetings he had with agency officials, were protected, whereas others were not.

¶15     Nor can we agree with the appellant's suggestion that the mere mention of unprocessed safety alerts constitutes a disclosure of an imminent safety concern. PFR File, Tab 1 at 4. Even assuming that patient alerts can notify healthcare providers of imminent issues, such as abnormal test results, the appellant has not identified the content of his unprocessed alerts and makes no more than conclusory allegations that the alerts could cause "treatment delays, mis-diagnosis, and medical complications." *Id.* Thus, the appellant has not set forth a sufficiently detailed allegation that his unprocessed alerts were of the kind that might cause imminent harm to a patient. *Cf., e.g.*, *Tatsch v. Department of the Army*, 100 M.S.P.R. 460, ¶¶ 10-13 (2005) (holding that the appellant nonfrivolously alleged a reasonable belief that her disclosure evidenced a specific danger to public health or safety in reporting two incidents involving the improper triage of on-scene, late-term, unstable pregnant women in labor). Accordingly, we affirm the administrative judge's findings that the appellant failed to make a nonfrivolous allegation that he disclosed a matter that a reasonable person in his position would believe evidenced a substantial and specific danger to public health or safety in his June 11, July 15, and September 17, 2015 emails to his supervisors.

¶16     Finally, the administrative judge properly found that the November 5 and 6, 2015 email communications made by other agency staff did not constitute a protected disclosure because the appellant did not make the disclosure. ID at 8. Although the appellant was copied on these communications, he was not the source of the communications, thus the communications themselves were not protected disclosures under 5 U.S.C. § 2302(b)(8) vis-à-vis the appellant. IAF, Tab 5 at 27-29, 135. We thus affirm the administrative judge's findings that the appellant did not make a nonfrivolous allegation that the November 5 and 6, 2015 email communications constituted a protected disclosure.

<u>The administrative judge properly found that the appellant did not exhaust his administrative remedies before OSC concerning his alleged disclosures during meetings with agency officials on May 25, July 15-16, and November 5, 2015.</u>

¶17    On review, the appellant also disputes the administrative judge's findings that, as to the four disclosures that he had nonfrivolously alleged were protected, he failed to exhaust his administrative remedies before OSC. PFR File, Tab 1 at 9-11. Under 5 U.S.C. § 1214(a)(3), an employee is required to "seek corrective action from [OSC] before seeking corrective action from the Board" through an IRA appeal. *Miller*, 122 M.S.P.R. 3, ¶ 6. The substantive requirements of exhaustion are met when an appellant has provided OSC with a sufficient basis to pursue an investigation. *Chambers v. Department of Homeland Security*, 2022 MSPB 8, ¶ 10. The Board's jurisdiction over an IRA appeal is limited to those issues that have been previously raised with OSC, but appellants may give a more detailed account of their whistleblowing activities before the Board than they did to OSC. *Id.* Appellants may demonstrate exhaustion of their OSC remedies with evidence regarding their initial OSC complaint and other communications with OSC concerning their allegations. *See Baldwin v. Department of Veterans Affairs*, 113 M.S.P.R. 469, ¶ 8 (2010).

¶18    The appellant argues that he provided OSC with a sufficient basis on which to pursue an investigation as to each of his alleged disclosures when he informed OSC that unanswered patient alerts represented a substantial and specific danger to the health and safety of the agency's patients. PFR File, Tab 1 at 9-11. We agree with the administrative judge that the appellant did not prove exhaustion regarding his alleged disclosures during meetings with agency officials on May 25, July 15-16, and November 5, 2015. ID at 8-12.

¶19    As to the appellant's July 16, 2015 communication to his second-level supervisor and his November 5, 2015 communication to his first-level supervisor, our review of the appellant's OSC complaint and supplemental correspondence reflects, as the administrative judge found, that there is no mention of either

communication in the appellant's OSC complaint and subsequent correspondence. ID at 9. We have considered the appellant's argument that he provided OSC with his "core" concerns about patient care but nevertheless cannot conclude that the appellant provided OSC with a sufficient basis to investigate his July 16 and November 5, 2015 communications to agency officials. PFR File, Tab 1 at 9-11. At no time in the appellant's complaint or correspondence with OSC prior to the closure of its file did the appellant articulate that the agency's actions constituted harm to patients or otherwise affected public health or safety. IAF, Tab 1 at 10-30, Tab 5 at 16-127. Rather, the appellant's complaint and correspondence to OSC concern his relocation incentive agreement and his workload, specifically the denial of overtime and compensatory time off, and that his first-level supervisor's practices put him behind in his workload. IAF, Tab 1 at 10-30, Tab 5 at 16-127. Accordingly, no evidence provided to OSC suggests that the appellant disclosed a substantial and specific danger to public health or safety to agency officials.

¶20 The appellant contends that the emails he submitted to OSC "directly concern Appellant's growing apprehension and fear that the escalating number of unanswered patient alerts represented a substantial and specific danger to the health and safety of VA patients under his care," but his correspondence to OSC does not mention such a concern. PFR File, Tab 1 at 10. The appellant's references to alerts and patients occur in the context of his workload, which he contends he was unable to manage, but these references do not articulate a danger to patient health and safety. The appellant's September 17, 2015 email to his supervisor is perhaps the most descriptive of patient care, but as discussed above, it fails to connect patient care with a concern about patient health or safety, and we cannot conclude that this email or any other communication to OSC provided sufficient facts for OSC to pursue an investigation into a substantial and specific danger to the health and safety of the agency's patients. IAF, Tab 5 at 46.

¶21  On review, the appellant also cites to his November 19, 2015 EEO complaint in support of his argument that he advised OSC that factors such as "double booking of patients, staffing shortages, reduced triage times and increased patient load" contributed to an imminent concern for patient safety, but we do not find that his EEO complaint put OSC on notice of any disclosure regarding a substantial and specific danger to public health or safety. PFR File, Tab 1 at 10-11. Although the EEO complaint references the effect that case assignments have on patient care, treatment, and safety, there is no suggestion in the EEO complaint that the appellant made such a disclosure outside of the complaint; rather, his EEO complaint focuses on his allegation of disparate treatment on the basis of race in case assignments. IAF, Tab 5 at 128-30. Additionally, although the appellant asserts on review that he provided the EEO complaint to OSC, there is no evidence that he in fact submitted it to OSC. Each of the other documents the appellant asserts he provided to OSC consist of an email showing the date on which he sent the document to the OSC investigator and documents referenced in the email. However, there is no such email or other evidence showing that he sent the EEO complaint to the investigator, nor does the appellant attest to sending the EEO complaint to OSC in the sworn affidavit he submitted in support of his jurisdictional response. *Compare* IAF, Tab 5 at 16-127, 134-35, *with* IAF, Tab 5 at 128-30. Thus, the appellant has not established that he provided his EEO complaint to OSC or that it was sufficient to put OSC on notice that he disclosed a substantial and specific danger to public health or safety.

¶22  The appellant also provided a July 7, 2016 letter from his attorney to OSC, which contends that "his immediate supervisor also increased his case loan [sic] and reduced patient consultation time periods which directly compromised patient safety during the period May 25, 2015 through January, 2016"; however, this language does not suggest that he communicated this purported compromise of patient safety to his supervisor or other agency official. IAF, Tab 5 at 132-33.

Moreover, the letter was sent after OSC informed the appellant that it closed its investigative file, and the appellant has not provided any evidence that OSC subsequently investigated this allegation. IAF, Tab 1 at 9, Tab 5 at 132-33. Accordingly, we find that the appellant has not established that this letter, or any other documentation he provided to OSC, provided sufficient facts for OSC to pursue an investigation into a substantial and specific danger to the health and safety of the agency's patients.

¶23      Even if the appellant had provided sufficient facts to OSC to investigate wrongdoing, the July 16 and November 5, 2015 communications were new allegations outside of any core claims he made to OSC. Although an appellant may add further detail to his claims before the Board, he must first provide OSC with a sufficient basis to pursue an investigation. *Chambers*, 2022 MSPB 8, ¶ 10. The appellant's complaint to OSC mentioned that he notified his second-level supervisor about his overtime complaints sometime after July 29, 2015, but there is no indication that the appellant made any disclosure of a substantial and specific danger to patient health or safety to his second-level supervisor prior to that date; thus, OSC would not have had sufficient facts to pursue an investigation of this prior alleged disclosure. IAF, Tab 1 at 17; *see, e.g.*, *McCarthy v. Merit Systems Protection Board*, 809 F.3d 1365, 1374 (Fed. Cir. 2016) (concluding the appellant did not provide OSC with a sufficient basis to pursue an investigation concerning four legal memoranda written by the appellant when the memoranda identified "different disclosures, made to different people, at different times" than those disclosures identified in the appellant's OSC complaint). Similarly, the appellant's complaint and correspondence to OSC do not identify any disclosures occurring after September 2015; accordingly, he did not provide OSC with sufficient facts to investigate subsequent disclosures, such as his alleged November 5, 2015 disclosure.

¶24      We also agree with the administrative judge that, regarding the appellant's alleged disclosures during meetings on May 25 and July 15, 2015, although the

appellant's complaint to OSC described these meetings, at no time in his description of the meetings did he articulate that the agency's actions constituted harm to patients or otherwise affected public health or safety. IAF, Tab 1 at 10-30. Further, none of the correspondence the appellant provided to OSC described these meetings in a manner that would put OSC on notice that he disclosed a substantial and specific danger to public health or safety during the meetings. IAF, Tab 5 at 31-32. We thus affirm the administrative judge's findings that the appellant did not exhaust his administrative remedies before OSC with respect to the communications he made to agency officials during meetings that took place on May 25, July 15-16, and November 5, 2015.[10]

¶25     Accordingly, we affirm the initial decision on the grounds that the appellant failed to make a nonfrivolous allegation that he made protected disclosures as to four of his communications to agency officials, and as to the remaining four communications, he failed to exhaust his administrative remedies before OSC, warranting dismissal of his IRA appeal for lack of jurisdiction.

---

[10] In his jurisdictional response, the appellant filed a March 14, 2016 letter from the OSC Disclosure Unit, which notified the appellant that it would take no further action concerning his allegations of agency wrongdoing and that he could raise his allegation of racial discrimination with the CEU. IAF, Tab 5 at 11-12. In his complaint alleging retaliation, filed with the CEU, the appellant asserted that he received a letter of counseling "after notifying . . . OSC on October 23, 2015." IAF, Tab 1 at 19. He further stated that, "[s]ince this . . . OSC intervention, my work environment is still toxic." *Id.* at 20. To the extent the appellant may have been alleging that the agency retaliated against him for making disclosures to OSC, which may be protected under 5 U.S.C. § 2302(b)(8)(B) or (b)(9)(C), we find that the above statements were so vague that they did not provide OSC with a sufficient basis to pursue an investigation. In fact, there is no indication in this record that the appellant informed the OSC CEU that he had made disclosures to the OSC Disclosure Unit. Moreover, even if we found that the appellant had exhausted his remedies regarding allegations that the agency retaliated against him for his disclosures to OSC, he did not make any such argument in his submissions below. IAF, Tabs 1, 5. Further, the initial decision did not address a claim of retaliation for disclosures to OSC, and the appellant did not raise the issue in his petition for review. IAF, Tab 7; PFR File, Tab 1. Accordingly, do not further discuss any claim of retaliation for disclosures made to OSC.

## NOTICE OF APPEAL RIGHTS[11]

You may obtain review of this final decision. 5 U.S.C. § 7703(a)(1). By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file. 5 U.S.C. § 7703(b). Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction. If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements. Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) Judicial review in general**. As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be received by the court within **60 calendar days** of the date of issuance of this decision. 5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

---

[11] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions. As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2) Judicial or EEOC review of cases involving a claim of discrimination**.  This option applies to you only if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination.  If so, you may obtain judicial review of this decision—including a disposition of your discrimination claims—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** after you receive this decision.  5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. ____ , 137 S. Ct. 1975 (2017).  If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** after your representative receives this decision.  If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and

to waiver of any requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of your discrimination claims only, excluding all other issues. 5 U.S.C. § 7702(b)(1). You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** after you receive this decision. 5 U.S.C. § 7702(b)(1). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** after your representative receives this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C. 20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C. 20507

**(3) Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012**. This option applies to you only if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D).

If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[12] The court of appeals must <u>receive</u> your petition for review within **60 days** of the <u>date of issuance</u> of this decision. 5 U.S.C. § 7703(b)(1)(B).

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

> U.S. Court of Appeals
> for the Federal Circuit
> 717 Madison Place, N.W.
> Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The

---

[12] The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017.  The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction. The All Circuit Review Act is retroactive to November 26, 2017. Pub. L. No. 115-195, 132 Stat. 1510.

Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

FOR THE BOARD:                          /s/ for

Jennifer Everling
Acting Clerk of the Board

Washington, D.C.